*In re* DISSOLUTION OF EVER KRISP FOOD PRODUCTS CO.
CLAIM OF UNITED STATES.
CLAIM OF CITY OF DETROIT.
CLAIM OF COUNTY OF WAYNE.
CLAIM OF UNEMPLOYMENT COMPENSATION COMMISSION.

1. INSOLVENCY—UNITED STATES—PRIORITY.
United States statute providing that debts due the United States by an insolvent debtor shall be first satisfied is a priority statute rather than a lien statute and the priority thereby accorded is not the equivalent of a specific and perfected lien (31 USCA, § 191).

2. CORPORATIONS—RECEIVERS—PRIOR TAX LIENS.

  The receiver of an insolvent corporation takes its property subject to city and county tax liens.

3. TAXATION—FEDERAL LIENS—SUBSEQUENT LOCAL LIENS.

  A Federal tax lien securing a Federal tax takes precedence over later liens of a city, county or State.

4. LIENS—ATTACHMENT—TRANSFER OF TITLE.

  Property to which a lien is attached passes *cum onere* into whosesoever hands the property goes.

5. CORPORATIONS—INSOLVENCY—TAX LIENS—FEDERAL PRIORITY CLAIM.

  A specific and perfected tax lien imposed by State law should not be displaced in voluntary dissolution proceedings of an insolvent corporation by a later priority claim that is not a lien but that is asserted under Federal authority (Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; § 15315, as amended by Act No. 44, Pub. Acts 1933; § 15352).

6. TAXATION—PERSONAL PROPERTY—LIENS.

  Under State general tax laws, the tax assessment and lien for personal taxes is specifically upon the whole personal property, follows the property into the hands of an insolvent taxpayer's receiver and attaches to the proceeds of the property (1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).

7. LIENS—ATTACHMENT—VALUE OF PROPERTY.

  The value of property at all times is the value less the amount of any prior specific perfected liens.

8. RECEIVERS—VALUE OF PERSONAL PROPERTY—TAX LIENS.

  The personal property of an insolvent taxpayer passes to its receiver burdened with prior specific and perfected city and county tax liens and the value of the property is reduced by the amount of such liens.

9. INSOLVENCY—UNITED STATES—PRIORITY—SPECIFIC PERFECTED LIENS.

  Under United States statute providing for priority of payment of debts due the United States from insolvent debtors a specific perfected lien is superior and is not displaced by the mere priority of the United States (31 USCA, § 191).

10. TAXATION—PERSONAL PROPERTY—LIENS—DISTRAINT—PURCHASER IN GOOD FAITH.

The personal property tax is a specific and perfected lien against all the personal property of the persons assessed, without regard to whether or not it continues in the hands of the tax debtor, as the property may be distrained although found in the hands of a subsequent purchaser in good faith; such purchaser taking the property subject to the tax lien (1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).

11. SAME—DATE WHEN LIENS FOR COUNTY AND CITY TAXES BECOME SPECIFIC AND PERFECTED.

The personal property tax liens of a county and city imposed by statute and city charter upon the personal property of a taxpayer become determined, specific, complete and perfected when assessing officers and boards of review have completed their duties and upon arrival of time set forth in the statute and charter respectively since it is unnecessary to resort to assistance from a court or do anything further to perfect the liens (1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; §§ 3438, 3500; Detroit Charter, title 6, chap. 4, §§ 1, 26).

12. SAME—PRIORITY OF TAX LIENS OVER MORTGAGE LIENS.

Ad valorem personal tax liens now take precedence over any prior as well as subsequent mortgage liens (1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).

13. SAME—TAX LIENS—MORTGAGE LIENS—PRIORITY OF UNITED STATES FOR SOCIAL SECURITY AND CAPITAL STOCK TAXES.

Since a mortgage, even though a lien, is one much more specific than a judgment or a tax, much closer to ownership, where an ad valorem tax lien is imposed by statute as superior to any prior mortgage lien, such tax lien is superior to a claim against an insolvent taxpayer's estate by the United States for social security and capital stock taxes as the United States recognizes the superiority of a prior mortgage lien to that of its own claims under the priority statute (31 USCA, § 191; 1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).

14. SAME—PURPOSE.

Taxes are for the support of government.

15. SAME—NATURE OF LIEN—DISTRAINT.

A tax lien is specific and perfected at least by the date it is declared to be imposed upon the property assessed by statute or city charter where no further process of law or court proceeding is required to determine the amount or to complete the fixing of the lien notwithstanding resort has not been made to distraint or foreclosure of the tax lien by seizure of the property (1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; §§ 3438, 3500; Detroit Charter, title 6, chap. 4, §§ 1, 26).

16. RECEIVERS—TAX LIENS—PRIORITIES—STATUTES.

Since the personal property of an insolvent taxpayer comes into the hands of receiver burdened with specific and perfected liens of county and city for taxes and the receiver becomes the owner of the assets of the taxpayer for the benefit of its creditors, such previously attached tax liens are superior to the claims of the United States resting solely on general statute as to priority to be accorded the United States (31 USCA, § 191; 1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; §§ 3438, 3500; Detroit Charter, title 6, chap. 4, §§ 1, 26).

17. SAME—SUBSEQUENT CITY TAX.

Receiver of insolvent taxpayer who became possessed of personal property of the taxpayer before the current year's city taxes became a lien did not take the property burdened with the city tax lien for that year (Detroit Charter, title 6, chap. 4, §§ 1, 26).

18. SAME—UNEMPLOYMENT COMPENSATION—LIEN FOR ASSESSMENT—AMENDMENT OF STATUTES—RETROACTIVE OPERATION.

Act, amending the unemployment compensation act, which it is contended controls imposition of lien for assessments under the unemployment compensation act, does not apply to case where receiver was appointed for insolvent taxpayer prior to effective date of the amendatory act and the amendment does not clearly appear to have been intended to operate retroactively (Act No. 1, § 15, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 364, Pub. Acts 1941).

19. STATUTES—PROSPECTIVE OPERATION.

All statutes are prospective in their operation excepting in such cases as the contrary clearly appears from the context of the statute itself.

20. SAME—RETROACTIVE EFFECT—VESTED RIGHTS.

Statutes will not be given a retroactive effect unless the legislative intent clearly appears and vested rights are unimpaired.

21. RECEIVERS—VOLUNTARY DISSOLUTION OF CORPORATIONS—ASSIGNEE FOR BENEFIT OF CREDITORS.

A permanent receiver appointed in case of voluntary dissolution of a corporation is vested with all its real and personal estate; is trustee thereof for the benefit of its creditors and stockholders; and has all the powers, rights, duties and liabilities of an assignee of an insolvent debtor, except as otherwise provided by statute (3 Comp. Laws 1929, § 15315, as amended by Act No. 44, Pub. Acts 1933).

22. SAME—UNEMPLOYMENT COMPENSATION—LIEN FOR ASSESSMENTS —PRIORITIES.

Provisions of unemployment compensation act relative to contributions by employers expressly subordinating lien therefor to liens provided under Federal or State law for taxes and which contributions do not appear to have been fixed and ascertained at time of appointment of receiver under petition for voluntary dissolution of an insolvent corporation render the unemployment compensation commission's claim not only subordinate to county and city *ad valorem* personal property taxes but also subordinate to claims of the United States for social security and capital stock taxes where commission's claim is not only not a specific and perfected lien but does not yet appear to have attained the status of a lien (31 USCA, § 191; Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; §§ 3438, 3500; § 15315, as amended by Act No. 44, Pub. Acts 1933; § 15362; Act No. 1, § 15, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937; Detroit Charter, title 6, chap. 4, §§ 1, 26).

23. CORPORATIONS—INSOLVENCY—PERFECTED COUNTY AND CITY TAX LIENS.

Claims of county and city for *ad valorem* taxes on personal property upon which a specific and perfected lien had been imposed by statute and charter before receiver was appointed for insolvent corporation in voluntary dissolution proceedings fall within the first class of claims payable from the estate (Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]; §§ 3438, 3500; § 15315, as amended by Act No. 44, Pub. Acts 1933; § 15362; Detroit Charter, title 6, chap. 4, §§ 1, 26).

24. SAME—INSOLVENCY—SOCIAL SECURITY AND CAPITAL STOCK TAXES.
   Claims of the United States for social security and capital stock taxes fall within fourth class of claims against assets of insolvent corporation for which receiver was appointed in voluntary dissolution proceedings, by virtue of priority accorded under Federal statute (31 USCA, § 191; 3 Comp. Laws 1929, § 15315, as amended by Act No. 44, Pub. Acts 1933; § 15362).

25. SAME—INSOLVENCY—UNEMPLOYMENT COMPENSATION—CONTRIBUTIONS.
   Claim for contributions under the unemployment compensation act for which a lien had not been imposed before appointment of a receiver in voluntary dissolution proceedings of an insolvent corporation falls within fifth class of claims against assets (3 Comp. Laws 1929, § 15315, as amended by Act No. 44, Pub. Acts 1933; § 15362; Act No. 1, § 15, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

26. INSOLVENCY—CLASSIFICATION OF CLAIMS—PRO RATA DISTRIBUTION.
   Under statute relative to classification of claims against the assets of an insolvent debtor only those claims of the same class are entitled to pro rata distribution in case there are insufficient funds to pay all claims within that class in full (3 Comp. Laws 1929, § 15362).

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 5, 1943. (Docket No. 4, Calendar No. 42,358.) Decided November 29, 1943.

*In re* Dissolution of Ever Krisp Food Products Company, a Michigan corporation. On petition of receiver for instructions. From order determining priority, the United States appeals and the Michigan Unemployment Compensation Commission cross-appeals. Modified and affirmed.

*Samuel O. Clark, Jr.,* Assistant Attorney General, *Sewall Key, J. Louis Monarch,* and *Muriel Paul,* Special Assistants to Attorney General, *John C. Lehr,* United States Attorney, and *Arnold W. Lung-*

*erhausen,* Assistant United States Attorney, for the United States of America.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Florence Clement Booth* and *Daniel J. O'Hara,* Assistants Attorney General, for Unemployment Compensation Commission.

*Paul E. Krause,* Corporation Counsel, *John G. Dunn* and *Alfred S. Stolinski,* Assistants Corporation Counsel, for City of Detroit.

*William E. Dowling,* Prosecuting Attorney, *Samuel E. Brezner* and *Helen W. Miller,* Assistant Prosecuting Attorneys, for County of Wayne.

BOYLES, C. J. This case arises out of the dissolution of the Ever Krisp Food Products Company, an insolvent Michigan corporation, and involves the question of priority of several tax claimants. The United States of America claims priority for Federal social security taxes for the years 1938, 1939 and 1940, and for a capital stock tax for the year 1940. The city of Detroit claims a lien for personal property taxes assessed against the corporation for the years 1938, 1939 and 1940. The county of Wayne claims a lien for personal property taxes assessed against the corporation for the year 1939. The Michigan unemployment compensation commission claims that neither the United States, the city of Detroit or the county of Wayne are entitled to priority of payment, and that it is entitled to a pro rata distribution of its claim for contributions from the corporation as an employer, under the Michigan unemployment compensation act and 3 Comp. Laws 1929, § 15362 (Stat. Ann. § 27.2427),

defining priority of payment under assignments for the benefit of creditors.

The problem before the court therefore is to determine the priority of payment to which each of the several claimants is entitled, (1) the United States, (2) the city of Detroit, (3) the county of Wayne, (4) the Michigan unemployment compensation commission. It is conceded by all parties that the corporation is insolvent and that its assets are not sufficient to pay these several claims in full. However, the importance of the questions here presented for decision cannot be measured by the amount of money involved. The apparent conflict between State legislation and city charter provisions relating to taxes for governmental purposes, and recent Federal and State enactments for social security purposes and unemployment compensation benefits, has not heretofore been before this court.

On May 20, 1940, a majority of the board of directors of Ever Krisp Food Products Company, a Michigan corporation, filed in the circuit court for the county of Wayne in chancery a petition for dissolution of the corporation. The court assumed jurisdiction and in due course of time a decree was entered declaring the corporation to be insolvent. By the decree the corporation was dissolved and a permanent receiver appointed to liquidate its business pursuant to the provisions of Act No. 314, chap. 40, Pub. Acts 1915 (3 Comp. Laws 1929, § 15310 *et seq.* [Stat. Ann. § 27.2354 *et seq.*]).

On October 2, 1942, the receiver petitioned the circuit court for the county of Wayne for instructions for payment of tax claims. The receiver reported $1,475.38 on hand, available for administration expenses, payment to creditors, and for distribution. Petitions filed for payment of administration expenses were reported as approximately $1,000.

Preferred tax claims on file were reported by the receiver in excess of $1,600.

The United States filed two claims of priority, for payment of social security taxes amounting to $1,011.50 and a capital stock tax of $17.84, a total of $1,029.34. The city of Detroit filed a claim of a lien for personal property taxes for 1938, 1939 and 1940, amounting to $236.41. The county of Wayne filed a claim of lien for personal property taxes for 1939, amounting to $14.49. The Michigan unemployment compensation commission filed a claim for unemployment compensation contributions for 1938, 1939, to June 28, 1940, amounting to $645.04. The court held a hearing in open court on the petition of the receiver for instructions and entered an order, the pertinent parts of which are as follows:

"That the tax liens of the city of Detroit and the county of Wayne are of equal dignity and entitled each to payment in full out of available funds in the hands of the receiver as prior, superior and paramount liens to all other liens and claims, and the court further finding that the claim of the United States government is inferior to the liens of the city and county and is therefore entitled to payment after the city and county liens have been satisfied, and the court having further found that the claim of the Michigan unemployment compensation commission is junior to the foregoing liens and claims and is entitled to payment after these claims have been satisfied out of the balance of the funds remaining, if any, in the hands of the receiver;

"Now, therefore, it is ordered and adjudged that Joseph J. Oldani, permanent receiver of the Ever Krisp Food Products Company, a Michigan corporation, pay or cause to be paid out of the funds in his hands remaining after the payment of administration expenses, as ordered by this court under date of October 30, 1942, the tax liens and claims in

the following order, each claim to be paid in full in consecutive order before payment of the claim next in order as follows:

"1. The lien of the city of Detroit amounting to $236.41 and with interest to date being in the total amount of $272.61, and the lien of the county of Wayne amounting to $14.49 and with interest to date being in the total amount of $16.54, being claims of equal dignity are each ordered paid in full;

"2. Next in order the receiver shall satisfy the debt claim of the United States government amounting to $776.53 and with interest to date being in the total amount of $793.48, out of the balance of funds in his hands then remaining;

"3. Next he shall pay the claim of the Michigan unemployment compensation commission amounting to $645.04 and with interest to date being in the total amount of $684.78, so far as that claim may be satisfied out of the balance then remaining in his hands, if any."

From this order the United States appeals, and the unemployment compensation commission cross-appeals. The city and county for obvious reasons are content with the order.

We quote from the brief filed by counsel for the United States, stating the basis of its claim for priority of payment as follows:

"In seeking to enforce payment of a tax liability as against the competing claims of the city of Detroit, and the county of Wayne and the Michigan unemployment compensation commission, the United States relies upon the Federal statute, section 3466, Revised Statutes of the United States.

"This statute is as follows:

"'Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the ex-

ecutors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.'   (31 USCA, § 191.)

"Section 3466 is a *priority* statute rather than a *lien* statute.  It simply provides that in the case of an *insolvent* debtor the debts due the United States, whether for taxes or otherwise, shall be paid first."

In support of its claim, the substance of the argument for the United States is that:

"It is a well-established rule, where section 3466 of the Revised Statutes applies, that Federal tax claims are entitled to priority over the tax claims of a State, county or municipality, particularly where the claims of the latter have not become *specific and perfected liens.*  (Italics ours.)   *   *   *   Whether that concession in favor of mortgagees has any vitality today is an open question. *New York* v. *Maclay, supra* (288 U. S. 290 [53 Sup. Ct. 323, 77 L. Ed. 754]); *United States* v. *Texas, supra* (314 U. S. 480 [62 Sup. Ct. 350, 86 L. Ed. 356]).   *   *   *   There can be no doubt that tax liens which have not been in fact perfected do not defeat the Federal priority.  Moreover, it is settled that a mere statutory declaration that a State lien shall be first and prior does not create a specific and perfected lien."

The basis of the claim of counsel for the city of Detroit and the county of Wayne is that the personal property *ad valorem* tax liens of both city and county were complete, perfected and specific *liens* on July 15th and December 1st of each year respectively, and that as such liens these claims are superior.

The city relies on the provisions of its charter. Section 1 of chapter 4 of title 6 of the charter of the city of Detroit is as follows:

"All city taxes shall be due and payable on the fifteenth day of July in each year, and on that date shall become a lien on the property taxed."

Section 26 of the same chapter and title provides:

"All city taxes upon personal property shall become on said fifteenth day of July a lien thereon and so remain until paid, and no transfer of the personal property assessed shall operate to divest or destroy such lien."

The city also relies on the general property tax laws of the State, by reference to section 107 thereof (1 Comp. Laws 1929, § 3500 [Stat. Ann. § 7.161]) which provides:

"This act shall be applicable to all cities and villages where not inconsistent with their respective charters."

The county relies on the provisions of 1 Comp. Laws 1929, § 3429, as last amended by Act No. 38, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 3429, Stat. Ann. § 7.81). The applicable provisions of this section (as it applies to taxes on personal property) are as follows:

"And all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount, on all personal property of such persons so assessed from and after the first day of December in each year for State, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city, and so remain until paid, which said tax liens shall take precedence over all other claims, encumbrances and liens upon said personal property whatsoever, whether created by chattel mortgage, title-retaining

contract, execution, or upon any other final process of a court, attachment, replevin, judgment or other-wise, and whether such liens, claims and encumbrances created by chattel mortgage, title-retaining contract, execution or upon any other final process of a court, attachment, replevin, judgment or other-wise, become effective prior to the effective date of this act or subsequent thereto, and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade. The personal property taxes hereafter levied or assessed by any city shall be a first lien, prior, superior and paramount to any other claims, liens and encumbrances whatsoever upon the personal property assessed as herein provided, any provisions in the charter of such cities to the contrary notwithstanding.''

The position taken by the unemployment compensation commission, as stated in its brief, is as follows:

''The unemployment commission contends that the provisions of the judicature act, 3 Comp. Laws 1929, § 15362, providing that tax claims shall be paid on a pro rata basis is controlling in proceedings for the dissolution of a corporation, at least insofar as the claims of the city, county and State are concerned; that the general property tax law, 1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 (1st Ex. Sess.), although providing that certain taxes shall be prior to private liens, does not amend by implication nor in any way change the pro rata distribution among tax claimants provided in the judicature act (3 Comp. Laws 1929, § 15362); that the amendment to section 15 (e) of the Michigan unemployment act by Act No. 364, Pub. Acts 1941, is in effect as to the instant case, regardless of the time the tax accrued since the petition for instructions as to the distribution was filed after

the effective date thereof; that the retroactive nature of said amendment does not make it invalid; that the unemployment act does not subordinate the unemployment tax to other tax claims; that the claim of the United States is not entitled to priority over the unemployment commission's claim, said federal priority statute, section 3466, U. S. R. S., being inapplicable in view of the congressional intent expressed in the social security act.    *    *    *

"Therefore, it is the contention of the Michigan unemployment compensation commission that the tax claims involved in the instant case should be paid on a pro rata basis as provided in the law regulating assignments for benefit of creditors, *supra,* unless said statute is inapplicable by virtue of some other State or Federal law."

We first consider the claims of the United States, and the city and county. The priority statute relied upon by counsel for the United States (section 3466, *supra*) declares that whenever any person indebted to the United States is insolvent, the debts due the United States shall first be satisfied. It is conceded that this is a "priority" statute, and does not create a lien. The liens asserted by the city and county attached to the personal property of the Ever Krisp Food Products Company (with the exception of the 1940 city tax lien) before the company was adjudicated to be insolvent, a receiver appointed, and its property decreed to be turned over to the receiver (June 28, 1940). The receiver took the property at that time subject to the city and county tax liens.

In *Michigan* v. *United States* (1943), 317 U. S. 338 (63 Sup. Ct. 302, 87 L. Ed. 312), it was held that a Federal tax lien securing a Federal tax (estate tax) takes precedence over *later* liens of the city of Detroit, county of Wayne, and the State of Michigan, accruing *subsequent* to the Federal estate tax lien. While the decision was apparently based on

the supremacy theory of Federal enactments over
State laws, the court recognized that a receiver
takes property subject to *prior* and *existing* liens in
the following language:

" 'It is of the very nature and essence of a lien,
that no matter into whose hands the property goes,
it passes *cum onere.*' *Burton* v. *Smith,* 13 Pet. (38
U. S.) 464, 483 (10 L. Ed. 248); *Rankin* v. *Scott,* 12
Wheat. (25 U. S.) 177, 179 (6 L. Ed. 592); *Howard*
v. *Railway Co.,* 101 U. S. 837, 845 (25 L. Ed. 1081)."

If a Federal tax lien cannot be displaced by a
later tax lien imposed by State law, *a fortiori* reason
indicates that a *specific and perfected tax lien* im-
posed by State law should not be displaced by a
later priority claim (not a lien) asserted under Fed-
eral authority.

Under our tax laws, the tax assessment and lien
is specifically upon the whole personal property (1
Comp. Laws 1929, § 3429, as amended,* [Comp.
Laws Supp. 1940, § 3429, Stat. Ann. § 7.81]; Detroit
charter, title 6, chap. 4, § 1; *Crawford* v. *Koch,* 169
Mich. 372), follows the property into the receiver's
hands, and attaches to the proceeds of the property.
The value of the property at all times is the value
less the amount of any prior specific perfected liens.
The property therefore passes to the receiver bur-
dened with the city and county liens, its value as a
property reduced by the amount of those specific
perfected liens.

In the Federal cases construing section 3466,
U. S. R. S., the foregoing rule has been followed,
that a specific perfected lien is superior.

Section 3466, U. S. R. S., was passed in 1797, and
amended in 1799. It has been cited frequently. The
early Federal courts construed the act and defi-
nitely fixed its place and meaning on the question

---

* See Act No. 38, Pub. Acts 1934 (1st Ex. Sess.).—Reporter.

of priorities. In *Thelusson* v. *Smith,* 2 Wheat. (15 U. S.) 396 (4 L. Ed. 271), the question before the court was whether a judgment in favor of the government followed by levy and with the proceeds of the levy in the hands of the marshal, was superior to a judgment without a levy. Mr. Justice Story outlined the meaning of the *Thelusson Case* in *Conard* v. *Atlantic Insurance Co. of New York,* 1 Pet. (26 U. S.) 386, 440–442, 444 (7 L. Ed. 189). The case was decided in 1828. The court said:

"No lien is created by this law;   \*   \*   \*   It is only a priority in payment.   \*   \*   \*

"But it has never yet been decided by this court, that the priority of the United States will divest a specific lien, attached to a thing, whether it be accompanied by possession or not. Cases of lien, accompanied by possession, are, among others, the lien of a ship-owner to detain goods for freight, the lien of a factor on the goods of his principal for balances due him, the lien of an artisan for work and services upon the specific thing. On the other hand, there are liens, where the right is perfect, independent of possession; as the lien of a seaman for wages, and the lien of a bottomry holder on a ship for the sum loaned. In none of these cases, has it ever been decided, that in a conflict of satisfaction out of the thing itself, the priority of the United States cut out the lien of the particular creditor. \*   \*   \*

"The case of *Thelusson* v. *Smith,* 2 Wheat. (15 U. S.) 396 (4 L. Ed. 271), is not understood to justify any such conclusion.   \*   \*   \*

"The real ground of the decision, was, that the judgment creditor had never perfected his title by any execution and levy on the Sedgely estate; that he had acquired no title to the proceeds, as his property, and that if the proceeds were to be deemed general funds of the debtor, the priority of the United States to payment had attached against all

other creditors; and that a mere potential lien on land did not carry a legal title to the proceeds of a sale, made under an adverse execution. This is the manner in which this case has been understood by the judges who concurred in the decision; and it is obvious, that it established no such proposition, as that a specific and perfected lien can be displaced by the mere priority of the United States; since that priority is not of itself equivalent to a lien.''

The statute was before the circuit court of the United States for Illinois in *United States* v. *Duncan,* 4 McLean, 607 (25 Fed. Cas. [No. 15,003] 927, 935, 936), where the court said:

''It has been uniformly held in all the cases that the priority of the United States does not disturb any specific lien, nor the perfected lien of a judgment, that is, it does not supersede a mortgage on land, nor a judgment made perfect by the issue of an execution and a levy on land. * * * The real ground of the decision (*Thelusson Case*), the court says, was that the judgment creditors had never made his lien specific; * * * the case did not establish the principle that a specific lien could be displaced by the priority of the United States, because that priority was not of itself equivalent to a lien.''

Counsel for the United States relies upon *Spokane County* v. *United States,* 279 U. S. 80 (49 Sup. Ct. 321, 73 L. Ed. 621). In that case, the county liens in question were not perfected as first and prior liens under the Washington State decisions because of the lack of subsequent and necessary procedural steps to perfect them. There is an obvious difference between the *Spokane Case* and the statute of Michigan as construed by this court. In the *Spokane Case,* the law of the State of Washington provided a lien on the personal property assessed for taxes, which might be collected by distraint *if the property was still in the hands of the tax debtor.*

Chief Justice Taft, delivering the opinion in the *Spokane Case,* said, p. 94:

"From the judgment of the majority of the supreme court of Washington in this case (*Exchange National Bank of Spokane* v. *United States,* 147 Wash. 176 [265 Pac. 722, 62 A. L. R. 139]), we must infer that the liens of the two counties for the taxes levied before the receiver was appointed and not collected were not specific. This is really a State question. It is explained by the concurring opinion of Judge Parker, as follows:   *   *   *

" 'This record, I think, warrants the conclusion that neither the United States, the State of Washington nor Spokane county for the State of Washington has ever, by the prescribed statutory procedure, *perfected its inchoate tax lien right* against any of the property of which the funds here in question are the proceeds. I therefore view these respective tax debts wholly apart from any supporting lien right. Thus I think the question of which shall be first satisfied out of these funds is determinable by the language of section 3466, quoted in the majority opinion, and hence must be determinable in favor of the United States.' "

And the Chief Justice concludes the opinion in the *Spokane Case* as follows, p. 95:

"Whatever might have been the effect of more completed procedure in the perfecting of the liens under the law of the State, upon the priority of the United States herein, the attitude of the State court relieves us of consideration of it."

In this State the personal tax is a specific and perfected lien against *all* the personal property of the persons assessed, without regard to whether or not it continues in the hands of the tax debtor. The property may be distrained although found in the hands of a subsequent *bona fide* purchaser. Such a purchaser, although in good faith, takes the property

subject to the tax lien. *Crawford* v. *Koch, supra.*
In the case at bar, the tax lien has become specific
and perfected, while in the *Spokane Case* something
remained to be done before the tax became specific
and perfected, namely, to find the property still in
the hands of the tax debtor, otherwise the lien would
not attach. At the time of the *Spokane* decision
(1929), the Supreme Court of the United States
relied upon *Wilberg* v. *Yakima County* (1925), 132
Wash. 219 (231 Pac. 931, 41 A. L. R. 184). The con-
cluding paragraph of Chief Justice Taft's opinion is
clear. Later, in 1939, the Washington Supreme
Court in *Ernst* v. *Guarantee Millwork, Inc.,* 200
Wash. 195 (93 Pac. [2d] 404), decided that a per-
sonal property tax lien is a specific lien under the
law of the State of Washington. The *Ernst Case* is
directly in point with the case at bar and we quote
somewhat at length from it, pp. 196, 200, 201, 202:

"The controversy is one between the United
States, King county, J. B. Warrack, and Mary
Warrack, as to priority of payment out of the assets
of an insolvent corporation. * * *

"Appellant (United States) contends that, under
U. S. R. S. §§ 3466 and 3467 (31 USCA, §§ 191 and
192), it is entitled to have its claim for social se-
curity and income taxes paid by the receiver, from
funds in his hands, prior to the claims of respond-
ents. * * *

"On the other hand, respondents King county and
J. B. Warrack contend that, under Rem. Rev. Stat.
(Supp.), § 11265, a specific lien was created on cer-
tain personal property of Guarantee Millwork, Inc.,
prior to the appointment of the receiver; that this
property came into the hands of the receiver im-
pressed with such lien, and was sold under order of
court; and that they are entitled to have their claims
based upon such lien satisfied from the proceeds of
such sale in the hands of the receiver, prior to ap-

pellant's claim.  Section 11265, *supra,* provides in part:

"'The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the county assessor, and no sale or transfer of such personal property shall in any way affect the lien for such taxes upon such property.'  *  *  *

"We think it clear that, under § 11265, *supra,* the county is given a specific lien on the personal property assessed, from and after the date such property is listed with and valued by the county assessor, and that no distraint of such property is necessary to perfect such lien.  *Fowler* v. *Snohomish County,* 149 Wash. 530 (271 Pac. 587).  *  *  *

"Section 3466, *supra,* relied upon by appellant, is purely a priority statute, and no lien is created by it.  *United States* v. *Oklahoma,* 261 U. S. 253 (43 Sup. Ct. 295, 67 L. Ed. 638); *Bramwell* v. *United States Fidelity & Guaranty Co.,* 269 U. S. 483 (46 Sup. Ct. 176, 70 L. Ed. 368.)  Whatever rights the appellant has under this statute did not attach until the receiver was appointed.  *United States* v. *Oklahoma, supra; Spokane County* v. *United States,* 279 U. S. 80 (49 Sup. Ct. 321, 73 L. Ed. 621).

"Appellant cites many cases from the supreme court of the United States to sustain its claim to priority.  We have examined these cases, and find none of them that holds that the United States is entitled, under section 3466, *supra,* to priority over a claimant having a specific lien on property taken over by a receiver.  In fact, we do not understand that appellant contends it would be entitled to priority herein if respondents had such a lien, but appellant contends respondents have no such lien, because they did not actually cause the property assessed to be distrained.

"Appellant relies, to a very considerable extent, on two cases from this jurisdiction, namely, *Spokane*

*County* v. *United States, supra,* and *In re Dickson's Estate,* 197 Wash. 145, 84 Pac. (2d) 661. We do not think the case of *Spokane County* v. *United States* is authority for appellant's contention, for the reason that in the cited case the question of a specific lien was not in issue. This is evident from the case itself, and also from the following statement made by the court in *New York* v. *Maclay,* 288 U. S. 290, (53 Sup. Ct. 323, 77 L. Ed. 754):

" 'The tax held to have been subordinated in the Spokane county suit was not a perfected lien upon the property of the insolvent at the date of the receivership. 279 U. S. 80, 93, 94. The question was reserved whether a different conclusion would have been necessary if such a lien had been proved.'

"Neither do we think the case of *In re Dickson's Estate, supra,* purports to deal with priorities as between the United States, under section 3466, *supra,* and a claimant having a specific lien, but deals only with priorities as between general creditors.

"We are therefore of the opinion that respondent King county obtained a specific lien upon the personal property of Guarantee Millwork, Inc., for the years 1937 and 1938, prior to the appointment of the receiver; that the specific property assessed came into the hands of the receiver and was sold by him under order of court; that the specific lien followed the proceeds of the sale and attached thereto; and that the claims of King county and J. B. Warrack should be paid by the receiver from such proceeds, before the claim of appellant."

The decisions of other States are in harmony. In *Pope* v. *Knoxville Industrial Bank, Inc.,* 173 Tenn. 461 (121 S. W. [2d] 530), the court said:

"It is our opinion that section 1329 creates the lien for taxes and section 1574 provides a method for the enforcement of the lien. This being true,

then a lien in favor of the State, counties, and cities for taxes is not dependent for its existence upon the issuance of a distress warrant."

And in *Farmers Loan & Trust Co.* v. *Memminger*, 48 Neb. 17 (66 N. W. 1014), the court said:

"It is argued in the brief that this instruction is erroneous in stating that personal taxes are a lien on the personalty of the person assessed from the date of the delivery of the tax list to the county treasurer. It is insisted that the lien of such taxes in this State does not attach until after the treasurer or tax collector receives the tax books or lists, a demand has been made upon the taxpayer for the payment of the taxes assessed, and a levy has actually been made by the officer.  *  *  *  To hold that personal taxes are not a lien until the property has been seized by the treasurer would be the rankest kind of judicial legislation."

Counsel for the United States relies on the recent case of *United States* v. *Texas*, 314 U. S. 480 (62 Sup. Ct. 350, 86 L. Ed. 356). In that case the Texas civil statutes * declared that gasoline taxes due to the State from a distributor, "shall be a preferred lien, first and prior to any and all other existing liens, upon all the property of any distributor, devoted to or used in his business as a distributor." The controversy was between the State of Texas and the United States as to which had priority of claim for its respective gasoline taxes. The court said:

"With respect to this contention it may first be said that the 'property devoted to or used in his business as a distributor' is neither specific nor constant. But a more important consideration is that the amount of the claim secured by the lien is un-

---

* See Texas, General Laws 1933, chap. 44, § 7.—Reporter.

liquidated and uncertain. As we said in *New York* v. *Maclay* (288 U. S. 290): 'If the State were to * * * omit to ascertain the debt, it would never be able to sell anything, for it would not know how much to sell.' 288 U. S. at 293. That the legislature of Texas recognized this is revealed by another section of the statute. Article 7065a-8 (d) declared that, in the event of default, when it might become necessary for the State 'to bring suit or to intervene * * * for the establishment or collection' of its claims in judicial proceedings, the tax reports required of the distributor by other provisions of the statute should be 'prima facie evidence of the contents thereof,' but 'the incorrectness of said report or audit may be shown.' Thus, it was clearly envisaged that the amount of the taxes due, for which the lien was security, should be left to determination by the courts.

"As to the nature of the proper procedure for levy, seizure, and sale, it is enough to say that some procedure is essential. As we have indicated, the statutory scheme reveals that the legislature contemplated resort to the courts. In addition to the statutory provisions referred to above, article 7065a-8 (e) regulates the pleadings in suits by the attorney general to collect the tax, and article 7065a-9 determines the venue of such suits. Consequently, while it was clearly intended by article 7065a-7 to create a lien in favor of the State, we must conclude that of necessity it was nothing more than an inchoate and general lien. Certainly it did not of its own force divest the taxpayer of either title or possession. It could not become specific until the exact amount of the taxes due had been determined, and it could not be enforced without the assistance of the courts. Like the tax lien in *New York* v. *Maclay, supra,* it served 'merely as a *caveat* of a more perfect lien to come.' 288 U. S. at 294."

That is plainly not the situation in the case at bar. Not only had the exact amount of city and county

taxes been determined before the lien attached to the personal property thus taxed, but nothing further need be done to perfect the lien. Under our tax laws, the tax collector is given a warrant by the assessing officer, to collect the taxes. If not paid, he can seize personal property without further process. The lien is enforceable without the assistance of any court. 1 Comp. Laws 1929, § 3438 (Stat. Ann. § 7.91), provides:

"If any person, firm or corporation shall neglect or refuse to pay any tax assessed to him or them, the township or city treasurer, as the case may be, shall collect the same by seizing the personal property of such person, firm or corporation, to an amount sufficient to pay such tax, fees and charges for subsequent sale, wherever the same may be found (in the State), and from which seizure no property shall be exempt. He may sell the property seized to an amount sufficient to pay the taxes and all charges, in the place where seized, or in the township or city of which he is treasurer, at public auction, on giving public notice of the same at least five days previous to the sale, by posting written or printed notices in three public places in the township, village or city where the sale is to be made, which sale may be adjourned from time to time if he shall deem the same necessary; and in case property shall be seized and advertised as herein directed, during the life of the warrant, the sale may take place at any time within six days after the expiration thereof."

And as to the collection of unpaid city taxes, the authority of the city tax collector is comparable. Section 26 of chapter 4 of title 6 of the city charter of Detroit provides:

"On and after the twenty-sixth day of August in each year and at any time until the taxes mentioned

herein are paid, the city treasurer shall enforce the collection of all unpaid taxes which are assessed against the property or value other than real estate. If such taxes shall remain unpaid the city treasurer shall forthwith levy upon and sell at public auction the personal property of any person refusing or neglecting to pay such tax, or collect the same through the courts. Six days' notice of any such sale shall be given by the city treasurer by publication in the official newspaper. Whenever such sale shall have been made the proceeds thereof shall be applied to the payment of the taxes and percentage and the expense of such sale, and any surplus remaining thereafter shall be paid over to the owner of such property or other persons entitled to receive the same."

Counsel for the United States also relies on *New York* v. *Maclay,* 288 U. S. 290. The distinction between that case and the case at bar is apparent from the syllabus:

"Under R. S. § 3466, debts due by an insolvent corporation to the United States have priority over claims of a State for franchise taxes due *but not liquidated,* although by the State law such taxes are a lien in the sense that, *when liquidated,* they take precedence, by relation, over other intervening claims."

The opinion in that case states:

"The State of New York filed a claim for franchise taxes due for the years 1921 to 1925, but not assessed or liquidated till after the receivership. * * * Certiorari was granted in this case because of the claim of the petitioner that by the statutes of New York franchise taxes become liens in advance for the years in which they are due, though the amount is not fixed and must be liquidated thereafter.

"Liens in a sense they unquestionably are, but, we think, not so perfected or specific as to change the rule of distribution. The receivers were appointed, as we have seen, in January, 1927; and the petitioner, if not preferred at the time of the appointment, did not win itself a preference by anything done thereafter. * * * The lien thus created is effective for many purposes though its amount is undetermined."

The difference between that case and the situation now before us is apparent. We are not here considering an unliquidated undetermined tax. The city tax liens for the 1938 and 1939 taxes and the county tax lien for the 1939 taxes were complete, perfected and specific on July 15th and December 1st of each year respectively, and nothing further was required to perfect the liens. Nothing remained except to collect the tax. Another consideration leads to the same result. Under the statute law of this State, an *ad valorem* personal tax lien now takes precedence over any prior mortgage liens (section 40, general property tax law, as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).* If, as we believe, the United States decisions give a *prior* mortgage lien a preference over any priority claimed by virtue of section 3466, U. S. R. S., it should follow that an *ad valorem* personal tax lien in this State is superior to a priority claimed under section 3466.

Prior to the effective date of Act No. 38, Pub. Acts 1934 (1st Ex. Sess.), a later *ad valorem* personal property tax lien did not take precedence over a prior chattel mortgage lien. *Lucking* v. *Ballantyne*, 132 Mich. 584; *Dunitz* v. *Albert Pick & Co.*, 241 Mich. 55. In *Detroit Trust Co.* v. *City of Detroit* (1934), 269 Mich. 81, decided prior to the effective

* Comp. Laws Supp. 1940, § 3429, Stat. Ann. § 7.81.—Reporter.

date of the 1934 amendment, citing the *Lucking* and *Dunitz Cases, supra,* it was further held that a 1929 act amending the personal property tax lien law (Act No. 107, Pub. Acts 1929) was *not* retroactive in effect and hence did not control the question of priority of a *subsequent* personal property tax lien as against a chattel mortgage lien executed in 1927. After this decision, the legislature gave effect to Act No. 38, Pub. Acts 1934 (1st Ex. Sess.). This act expressly provides:

"And all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount, on all personal property of such persons so assessed from and after the first day of December in each year for State, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city, and so remain until paid, which said tax liens shall take precedence over all other claims, encumbrances and liens upon · said personal property whatsoever, whether created by chattel mortgage, title-retaining contract, execution, or upon any other final process of a court, attachment, replevin, judgment or otherwise, and *whether such liens,* claims and encumbrances created by chattel mortgage, title-retaining contract, execution or upon any other final process of a court, attachment, replevin, judgment or otherwise, *become effective prior to the effective date of this act or subsequent thereto,* and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade."

From the foregoing it is apparent that the rule announced in the *Lucking* and *Dunitz Cases,* and reaffirmed in *Detroit Trust Co.* v. *City of Detroit, supra,* has been changed by statute. Since the effective date of Act No. 38, Pub. Acts 1934 (1st Ex.

Sess.), personal property taxes have been and now are a first lien superior to all other claims, encumbrances and liens whether prior or not.

That the city and county tax liens are superior to the priority claim of the United States under section 3466, U. S. R. S., is in conformity with what seems to be the decisions of the United States Supreme Court as to the superiority of mortgage liens over a claim for priority under section 3466. In *New York* v. *Maclay, supra,* the court said:

"We do not now determine whether the holding in the mortgage cases is to be applied in jurisdictions where a mortgage upon real estate is a lien and nothing more (*Trimm* v. *Marsh,* 54 N. Y. 599 [13 Am. Rep. 623]), nor whether, if so applied, it imports a modification of the holding in the *Thelusson Case* as to the lien of a judgment. Cf. *United States* v. *Canal Bank,* 3 Story, 79, 81 (25 Fed. Cas. [No. 14715] 277); *United States* v. *Duncan,* 4 McLean, 607, 630 (25 Fed. Cas. [No. 15,003] 927). A mortgage, even though a lien, is one much more specific than a judgment or a tax, much closer to ownership."

And in *United States* v. *Texas, supra,* the court further leaves the door open to a conclusion that a prior mortgage lien is superior to a United States priority claim under section 3466, as follows:

"Section 3466 mentions no exception to its requirement that 'the debts due to the United States shall be first satisfied.' It is nevertheless true that in several early decisions this court read an exception into the section in the case of previously executed mortgages. *Thelusson* v. *Smith,* 2 Wheat. (15 U. S.) 396, 426 (4 L. Ed. 271); *Conard* v. *Atlantic Insurance Co. of New York,* 1 Pet. (26 U. S.) 386 (7 L. Ed. 189); *Brent* v. *Bank of Washington,* 10 Pet. (35 U. S.) 596, 611, 612 (9 L. Ed. 547). This doc-

trine seems to have been based on the theory that mortgaged property passes to the mortgagee and is no longer a part of the estate of the mortgagor. See *Conard* v. *Atlantic Insurance Co. of New York, supra,* at 441, 442. The question of whether the priority of the United States under section 3466 would also be defeated by a specific and perfected lien upon property, whose title remained in the debtor was reserved in those cases.''

Counsel for the United States now recognizes the possibility of its priority claim being subservient to a prior mortgage lien, as thus stated in their brief, in discussing *Thelusson* v. *Smith, supra:*

''Whether that concession in favor of mortgagees has any vitality today is an open question. *New York* v. *Maclay, supra*; *United States* v. *Texas, supra.''*

We have not been able to find where it has been held by the Federal courts that the Federal priority under section 3466, U. S. R. S., comes ahead of a preexisting specific and perfected lien. The applicable decisions seem to hold otherwise. *United States* v. *Griswold* (Oregon), 8 Fed. 496; *York Manfg. Co.* v. *Cassell,* 201 U. S. 344 (26 Sup. Ct. 481, 50 L. Ed. 782); *Marshall* v. *New York,* 254 U. S. 380 (41 Sup. Ct. 143, 65 L. Ed. 315); *In re Tresslar* (Ala.), 20 Fed. (2d) 663: *In re A. E. Fountain, Inc.* (N. Y.), 295 Fed. 873.

If the position taken by the United States were to be upheld, we would have the strange result that a *tax lien* on personal property would be inferior to the claim of the United States for priority of payment out of the taxed property (on the ground that the *tax* lien had not been perfected by distraint of the taxed property), while a *mortgage* lien on personal property would be *superior* to the claim of the United States for priority of payment out of the

mortgaged property, although the *mortgage* lien had *not* been perfected by seizure of the mortgaged property. Taxes are for the support of government. We see no sound reason why a mortgagee who has not yet proceeded to enforce his lien by foreclosure or seizure of the mortgaged property should be favored as against the claim of the United States for priority of payment, and at the same time a governmental subdivision (city or county) in the same situation, namely, not having "perfected its lien" (as now asserted by counsel for the United States) by distraint, or foreclosure of its tax lien by seizure of the property, should be in a less favored position.

As we view the issue, it narrows down to whether a specific, perfected tax *lien* is superior to a priority right of distribution created by either Federal or State enactments. Unless we are to ignore the plain declarations in the State general property tax statute and the provisions of the Detroit city charter, we must conclude that the city of Detroit taxes for 1938 and 1939, and the county of Wayne taxes for 1939, had become specific, fixed and perfected tax liens on the personal property of the insolvent corporation before its property was transferred and turned over to the receiver on June 28, 1940. We hold that these city and county taxes had become determined, specific, complete and perfected liens, and the exact amounts thereof definitely fixed, after these taxes had been assessed and spread on the respective tax assessment rolls, the respective boards of review or the city council had completed their duties, and the time had arrived under express declaration in the State tax laws and the city charter when these city and county taxes became a lien on the property. All statutory and charter requirements of due assessment and review had been completed, and the time for so doing had expired at

the respective times when these taxes became a lien. The liens were no longer inchoate. As to city taxes, this date is fixed by the city charter—July 15th of each year; and as to the county taxes, the statute fixes the date—December 1st of each year. These city taxes had become a specific and perfected lien on July 15, 1938 and 1939 respectively. The county tax for 1939 became a similar lien on December 1, 1939. No further process of law or court proceeding was required to determine the amount, or to complete the fixing of the lien, on the respective dates referred to in the city charter and in the statute law. We hold that the liens were specific and perfected and in effect on those respective dates, before the receiver became the owner of the assets of the corporation for the benefit of creditors. We are in accord with the decision of the lower court, that the property of the insolvent debtor came into the hands of the receiver burdened with city and county *liens*. These city and county tax liens are superior to the claim of the United States for priority as to social security taxes and capital stock taxes. But as to the city taxes for the year 1940. In 1940, these taxes did not become a *lien* until July 15, 1940, and this was subsequent to the time (June 28, 1940) when the receiver became possessed of the property. The receiver did not take the property burdened with a city tax lien for the 1940 city taxes.

We now turn to the claim of the Michigan unemployment compensation commission. The unemployment compensation commission contends that the lien and priority provisions of the unemployment compensation act (section 15)* were amended

* Act No. 1, § 15, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–55, Stat. Ann. 1940 Cum. Supp. § 17.515).—REPORTER.

in 1941 (Act No. 364, Pub. Acts 1941), and that the 1941 amendment to section 15 of the act now controls. We find nothing in the 1941 amendment to section 15, nor in any other part of the 1941 act, from which it can clearly be said that the act is retrospective in effect as to section 15. This being true, the instant case is not affected by the 1941 amendment. As was said in *Detroit Trust Co.* v. *City of Detroit, supra*:

"We think it is settled as a general rule in this State, as well as in other jurisdictions, that all statutes are prospective in their operation excepting in such cases as the contrary clearly appears from the context of the statute itself."

"Statutes will not be given a retroactive effect unless the legislative intent clearly appears and vested rights are unimpaired." *Board of Supervisors of Arenac County* v. *Board of Supervisors of Iosco County* (syllabus), 158 Mich. 344.

That part of 3 Comp. Laws 1929, § 15362 (Stat. Ann. § 27.2427), relied upon by the unemployment compensation commission as the basis of its claim of equal priority, is as follows:

"Funds available for distribution shall be applied to the payment of the following items and in the following order:
"1. All taxes legally due and owing by the assignor to the United States, State, county or municipality;
"2. The cost of administration;
"3. All labor debts entitled to preference under the laws of this State;
"4. All other debts which under the laws of the United States or of this State are entitled to priority;
"5. All other claims preferred and allowed;

"6. Any remaining surplus to be paid to the assignor, his representatives or assigns.

"In case the funds shall be insufficient to pay any class in full, then the same shall be distributed pro rata among such class."

This section is a part of chapter 42 of the Michigan judicature act (Act No. 314, Pub. Acts 1915). This chapter in its entirety refers to assignments for the benefit of creditors. Proceedings for voluntary dissolution of corporations (in chancery) are governed by the provisions of chapter 40 of the judicature act, hereinbefore referred to (3 Comp. Laws 1929, § 15310 *et seq.* [Stat. Ann. § 27.2354 *et seq.*]). Section 6 of this chapter (3 Comp. Laws 1929, § 15315, as amended by Act No. 44, Pub. Acts 1933 [Comp. Laws Supp. 1940, § 15315, Stat. Ann. § 27.2359]) provides:

"Upon giving bond and qualifying, as the court may direct, such permanent receiver shall be vested with all the estate, real and personal, of such corporation and shall be trustee thereof for the benefit of its creditors and stockholders, and shall have all the powers, authority and remedies of an assignee for an insolvent debtor, and also the power to continue the business of such corporation for such period as the court shall permit; and so far as they may be applicable, shall be subject to all the duties and obligations of such an assignee, except where other provisions are herein made. The provisions of law regulating common-law assignments with reference to sales of property, notice to creditors to prove claims, the proving, contesting and allowing of claims, the making of set-offs, the powers of the court in chancery or judge thereof, the making and filing of accounts, the closing of the estate, the distribution of dividends and the compensation of the receiver, shall apply and be followed except that (a) stockholders as well as

creditors shall be given notice of claims filed and may with like effect request that any claim be contested; (b) stockholders shall be given notice of such other matters and in such manner as the court may require; (c) in distributing dividends any surplus remaining after payment of expenses and after creditors are paid in full shall be distributed among the stockholders according to their respective rights as determined by the court.''

Under these provisions, the receiver has the powers, rights, duties and liabilities of an assignee of an insolvent debtor, except as otherwise provided by statute. *McPherson* v. *Gregory,* 271 Mich. 580.

A review of the provisions of the Michigan unemployment compensation act dispels the apparent conflict between its provisions and those of section 3466 of the Revised Statutes of the United States, *supra,* on which the United States relies, as it has been construed by Federal decisions. The Michigan unemployment act as applied to the case at bar, before the 1941 amendment (Act No. 364, Pub. Acts 1941) was passed, provided:

''(a)    *    *    *    Except for the lien provided under Federal or State laws with respect to taxes, and the enforcement of their collection, all contributions, interest and penalties required under the provisions of this act shall be a first and prior claim and lien against the property and assets of an employer.

''(b) The commission shall have the right to make assessments against any employer who fails to pay contributions or interest as required by this act.    *    *    *

''(e) In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this State, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceedings, contributions then or thereafter due shall be

paid in full prior to all other claims except for wages, taxes and compensation under the workmen's compensation act.'' Act No. 1, § 15, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-55, Stat. Ann. 1940 Cum. Supp. § 17.515).

The wording of the above provisions, in effect during the period of time (1938, 1939, 1940) when the unemployment compensation contributions now claimed became due and payable, is to the effect that the sums of money due and payable from the Ever Krisp Food Products Company to the Michigan unemployment compensation commission became and were a first and prior lien against the assets of the company, subservient only to any lien provided under Federal or State law for taxes. However, this was not a complete, specific and perfected lien when the receiver took over the assets of the corporation. Furthermore, it is not yet such a lien, under the United States Supreme Court decisions reviewed herein. See *Spokane County* v. *United States, supra* (279 U. S. 80); *New York* v. *Maclay, supra* (288 U. S. 290); *United States* v. *Knott,* 298 U. S. 544 (56 Sup. Ct. 902, 80 L. Ed. 1321, 104 A. L. R. 741); *United States* v. *Texas, supra* (314 U. S. 480). In that respect it is not the same as the tax liens of the city of Detroit and the county of Wayne.

The record before us discloses an essential difference between the specific and perfected liens of the city and county taxes, which are fixed and ascertained as to amount as well as to the respective dates when the same became liens, and the ''contributions'' exacted from employers under the Michigan unemployment compensation act, for which claim is now made. In the case at bar no testimony was taken and the claim filed by the unemployment compensation commission stands as the

only proof in the record as to its claim. It does not indicate when or whether the "contributions" became fixed and ascertained as to the amount, nor when the lien declared by the act became specific as to amount, or perfected as to time. The proof of claim states that it is for "unemployment compensation contribution authorized by Act No. 1 of the extra session of the Michigan legislature of 1936, as amended by Act No. 347, Pub. Acts 1937, and by Act No. 324, Pub. Acts 1939, imposing contributions of .9 of 1 per cent. for 1936; 2 per cent. for 1937 and 3 per cent. for 1938 to 1941, on the total wages payable or paid for employment in each such calendar year."

The proof of claim further states:

"This claim is not secured in any manner, nor in any amount thereof."

Nowhere is there an assertion of a specific and perfected lien. Nor can we see how such an assertion could prevail under the provisions of section 15 of the act. Section 15 (a) hereinbefore quoted merely declares that "all contributions, interest and penalties * * * shall be a first and prior claim and lien against the property and assets" of the employer (except Federal and State tax liens). This is followed in section 15 (Act No. 347, Pub. Acts 1937) by subsection (b) which provides that the commission shall have the right to make assessments against any employer who fails to pay "contributions" or interest as required by the act. It provides that the commission must notify the employer of the "assessment," and if the employer then files a protest against the "assessment" and demands a hearing, he is entitled to appear, present testimony. It is further provided that after such hearing the commission shall notify the employer

in writing of its finding, whereupon "the assessment, if any, made therein by the commission shall be final upon issuance of such notice."

It is obvious from the statute itself, on the record before us, that the unemployment compensation commission claim had not become a "specific and perfected lien" at the time the receiver took over the property of the insolvent. There is no claim that an assessment had been made in accordance with the statute. The amount was still open to ascertainment. It is not in the same class with the claims of the city and county for personal property taxes.

Nor is it entitled to equal priority with the claim of the United States under U. S. R. S. § 3466.

The claims of the city and county fall within the first division of 3 Comp. Laws 1929, § 15362, giving priority of payment to "all taxes legally due and owing by the assignor to the United States, State, county or municipality."

The claim of the United States falls within the fourth division:

"All other debts which under the laws of the United States or of this State are entitled to priority."

The claim of the unemployment compensation commission falls within the fifth division:

"All other claims preferred and allowed."

The unemployment compensation commission claims that "it is entitled to equal priority with the United States claim," under the following provision in 3 Comp. Laws 1929, § 15362:

"In case the funds shall be insufficient to pay any class in full, then the same shall be distributed pro rata among such class."

This does not apply to the claim of the unemployment compensation commission. As above stated, the claim of the commission is not in the same class with the claims of either the United States or the city and county. However, this does apply to the claims of the county and city for personal property taxes, which are in the same class, and for that reason they are to be prorated in case there are not sufficient funds to pay both in full.

The order of the lower court is affirmed, except as to the claim of the city of Detroit for priority of payment of its 1940 personal property tax for which its lien does not have priority. The case is remanded for entry of an order in accordance herewith, and with leave to redetermine and include accrued interest or penalties to date.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.