In the Matter of CENTURY VAULT
COMPANY, Inc., Bankrupt,

Harold J. Connor, Trustee in Bank-
ruptcy, Appellant.

No. 17573.

United States Court of Appeals
Third Circuit.

Argued June 12, 1969.

Decided Sept. 10, 1969.

Jerry Zaslow, Modell, Pincus, Hahn & Reich, Philadelphia, Pa., for appellant.

Larrick B. Stapleton, Fell, Spalding, Goff & Rubin, Philadelphia, Pa. (Alexander N. Rubin, Jr., Philadelphia, Pa., on the brief), for appellee.

Before STALEY, FREEDMAN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

Three taxing authorities are competing for either all or the lion's share of a $7,046.50 fund remaining in a bankruptcy estate after payment of only the costs and expenses of administration, there being no wage claimants.[1] In point of time they are: (1) Commonwealth of Pennsylvania, Department of Revenue, Bureau of Corporation Taxes (hereinafter "Department"), with a claim of $7,461.69; (2) Commonwealth of Pennsylvania, Bureau of Unemployment Contributions, with a claim of $5,771.44; and (3) Internal Revenue Service, Withholding and Social Security Taxes, claiming $8,242.30. The trustee in bankruptcy objected to all three claims; his objections to the second and third were overruled by the referee who held they were valid tax liens. But as to the first claim, the referee sustained the trustee's objection "that the amount claimed is an estimate and no proof of said amount has been offered." The referee further held that the Department did not have the status of a tax lien claimant but was merely presenting a tax claim and would therefore have to follow the second and third claimants in order of payment. Thus, out of the $7,046.50 fund, the Pennsylvania Bureau of Unemployment Contributions received $5,771.44, with the balance of $1,275.06 going to the Internal Revenue Service. The Department, of course, received nothing. Upon review, the district court reversed the referee's decision, holding that the Department possessed a valid lien in bankruptcy and that it had properly proved its lien claim. Before us now is the trustee's appeal from the district court's order remanding the record to the referee for further proceedings consistent with its opinion.

The corporation taxes involved here consist of capital stock taxes, corporate loan taxes, and corporate net income taxes.[2] Since neither the bankrupt nor

---

1. By virtue of § 67(c) (3) of the Bankruptcy Act, 11 U.S.C. § 107(c) (3), as amended, (Supp. IV), every tax lien on personal property unaccompanied by possession is postponed until payment of the costs and expenses of administration and wage claims as specified in § 64(a) of the Bankruptcy Act, 11 U.S.C. § 104(a), as amended, (Supp. IV).

2. The capital stock tax is one on the actual dollar value of all the corporation's capital

the trustee filed returns for the period between 1962 and March 23, 1967,[3] disclosing the bankrupt's liability for such taxes, the Department estimated the taxes due and owing from the bankrupt's 1961 tax return,[4] see 72 Purdon's Pa. Stat.Ann. § 804, and settled these estimates with the Department of the Auditor General. See 72 Purdon's Pa.Stat. Ann. §§ 801 et seq. There is no evidence that the bankrupt ever contested these estimates.[5]

At the audit in the bankruptcy court, the Department introduced a sworn and certified statement of claim, including settlement sheets for each of the taxes in question. The referee, relying upon dictum in our opinion in In re Lehigh Valley Mills, Inc., 341 F.2d 398 (C.A.3, 1965), where the same three types of corporate taxes were involved, held that the Commonwealth possessed only an inchoate lien since it was not thought to be summarily enforceable and had not proceeded to judgment.[6] In a recent decision dealing with this problem, In re Regal Petroleum Products Co., 287 F. Supp. 458 (E.D.Pa., 1968), the district court, at note 5, termed *Lehigh Valley* "inapplicable," and held that under section 1401 of the Pennsylvania Fiscal Code, 72 Purdon's Pa.Stat.Ann. § 1401 (Supp.),[7] and the Pennsylvania deci-

---

stock including common, preferred and special stock. 72 Purdon's Pa.Stat.Ann. § 1871 (Supp.). The corporate loan tax is upon "All scrip, bonds, certificates, and evidence of indebtedness issued * * * assumed, or on which interest shall be paid by any and every private corporation * * *." 72 Purdon's Pa. Stat.Ann. § 3250–10. The corporate net income tax is levied "upon each dollar of net income * * * received by, and accruing to, such corporation * * *." 72 Purdon's Pa.Stat.Ann. § 3420c (Supp.).

3. This is the date of the filing of the bankruptcy petition.

4. In his initial opinion, the referee stated that the estimates were based on past tax returns, but in his supplemental findings he stated:
"The last return filed by the Bankrupt Corporation was filed six years previous to the time involved in Proof of Claim No. 17 [the Department's claim] and was used by the Auditor General of the Commonwealth of Pennsylvania as the basis of the amount due for the following five years and these were the figures certified to the Department of Revenue as representing the taxes due by the Bankrupt Corporation."

5. Indeed, the way the system is set up, it would have been almost impossible for the bankrupt to have contested the estimates in the sense of offering a real challenge. In In re Monongahela Rye Liquors, 141 F.2d 864, 868 (C.A.3, 1944), this court described the taxpayer's recourse from a settled estimate thusly:

" * * * From any estimated settlement no right to review or appeal is allowed. The Department of Revenue may, however, with the approval of the Auditor General, permit the taxpayer to file a report belatedly and then make a settlement based on such report, cancelling the estimated settlements theretofore made (§ 804). But such action is a matter of grace and not of right. Here, again, a right to review or appeal the Department's refusal to allow the filing of a belated report is expressly denied the taxpayer (§ 804). The only review or appeal provided for under the statute presupposes a prior 'settlement' which has been based on a properly and duly filed report (§§ 1102, 1103)."

6. In *Lehigh Valley*, supra, the Commonwealth did not see fit to appear on the appeal. The only issue we need have decided there was whether under Section 646 of the Small Business Act, 15 U.S.C. § 646, the corporation taxes were "on the property" given as security for a loan from the Small Business Association. We held they were not and that the S.B.A.'s lien was superior to those of the Commonwealth.

7. Section 1401 provides in pertinent part: "All State taxes imposed under the authority of any law of this Commonwealth * * * hereafter * * * settled * * * against any corporation * * * shall be a first lien upon the franchises and property, both real and personal, of such corporation * * * from the date of settlement, assessment or determination * * * and * * * shall first be allowed and paid * * * before any judgment, mortgage, or any other claim or lien against such corporation * * *." 72 Purdon's Pa.Stat.Ann. § 1401 (Supp.).

sional law,[8] when estimated corporate taxes are settled with the Department of the Auditor General, they are valid statutory liens. On appeal, this court affirmed in a per curiam opinion, 413 F.2d 299 (C.A.3, 1969), and we now consider the issue settled.

■ At the time of our *Lehigh Valley* decision, (1965), section 67(c) (2) of the Bankruptcy Act invalidated as against the trustee all statutory liens created or recognized by state law on personal property not accompanied by possession, levy, sequestration, or distraint. See 4 Collier on Bankruptcy ¶ 67.281 (14th ed. 1967). And before the passage of the 1966 amendment to § 67(c) it was at least arguable that state tax liens on personalty unaccompanied by possession were invalidated by § 67(c) (2).[9] Compare Rochelle v. City of Dallas, Texas, 264 F.2d 166 (C.A.5), cert. denied, 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70 (1959), and In re Baron, 165 F.Supp. 186 (D.Conn.1958), with In

Matter of Gordon (Ref. E.D.Mich., 1952), 27 Ref.J. 85, July, 1953. See generally, 4 Collier on Bankruptcy § 67.-281 (14th ed. 1967). After the passage of the 1966 amendment, however, the basic test of a lien's validity became whether under state or federal nonbankruptcy law the lien was perfected against bona fide purchasers. 11 U.S.C. § 107(c) (1) (B), as amended, (Supp. IV).[10] And since there can be no doubt that under the law of Pennsylvania the instant liens were so perfected,[11] we hold, in consonance with this court's per curiam affirmance of *Regal Petroleum*, that the Department does have the status of a tax lien claimant in bankruptcy.

The Department spent a great deal of time at oral argument and space in its brief arguing on behalf of the district court's holding that its claim was properly proved. But as stated in Greenville Banking & Trust Co. v. Selcow, 25 F.2d 78, 79 (C.A.3, 1928): "Proof of a claim is one thing, and its allowance another."

---

8. See the cases cited and discussed by Judge Kraft in his opinion at 287 F.Supp. 458, 460–461.

9. Prior to the 1966 amendment, § 67(c) (2) stated in relevant part:
   " * * * statutory liens created or recognized by the laws of any State for debts owing to any person, including any State or any subdivision thereof, on personal property not accompanied by possession of, or by levy upon or by sequestration or distraint of, such property, shall not be valid against the trustee * * *." See 11 U.S.C. § 107 (c) (2).

10. This statute reads in pertinent part as follows:
   "(c) (1) The following liens shall be invalid against the trustee:
   *　　*　　*　　*　　*
   "(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided*, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona

fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law * * *." 11 U.S.C. § 107 (c) (1) (B) (Supp. IV).
   As can be gleaned from the proviso above, the statute permits a lien to be perfected against bona fide purchasers after bankruptcy, but in order to qualify for such perfection, the lien must at least have been valid against judgment creditors at the date of bankruptcy.

11. As stated by Mr. Justice Maxey in Commonwealth v. Central Realty Co., 338 Pa. 172, 179, 12 A.2d 312, 315 (1940):
   " * * * [After passage of the Act of June 15, 1911, P.L. 955, one of the predecessors of 72 Purdon's Pa.Stat. Ann. § 1401 (Supp.)] [i]t was thenceforth sufficient, in order to establish the lien, for the Commonwealth to settle the tax in the Auditor General's office in Harrisburg. The judgment creditor of or *bona fide purchaser* from the party against whom the taxes were assessed was thereafter required, for his own protection, to consult the Auditor General's records or indices in the State Capitol, where a search could be obtained for a small fee. * * *" (Emphasis added.)

And since we think the paramount issue before us is whether the Department's claim should be allowed, we will assume for purposes of this appeal that the claim was duly proved.[12]

Section 57(d) of the Bankruptcy Act provides:

"Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, *unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however,* That *an unliquidated* or contingent *claim shall not be allowed unless liquidated* or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title." (Emphasis added.) 11 U.S.C. § 93(d).

The law is clear that even if the trustee had not objected to the Department's claim, if the referee had doubts as to its nature, validity, or amount, he not only had the power but the obligation to order proper inquiries and satisfy himself that the claim was entitled to allowance. See Katchen v. Landy, 382 U.S. 323, 329, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Lesser v. Gray, 236 U.S. 70, 75, 35 S.Ct. 227, 59 L.Ed. 471 (1915); In re Noble, 15 F.Supp. 648, 650 (W.D.N.Y., 1936). It is evident from this record that the referee had grave doubts concerning the propriety of the amount of the claim, declaring it to be "nothing more than a guess" in his supplemental findings, and at the audit he directed counsel for the trustee to file a tax return for the bankrupt so that the proper amount of the bankrupt's corporate tax liability could be determined. Although a tax return was never filed, it seems almost certain from the record before us that had the referee not erred in thinking that the Department did not have a valid tax lien, he would have insisted that the trustee's attorney comply,[13] and thus, because it had the first lien in point of time, the Department would have been paid first, but only in the amount of the actual taxes that were due and owing. Judging from the Department's brief in this court, it appears that it would not have objected to being so paid, but now it argues, in effect, that all it had to do was to present an estimate; then it was the trustee's duty to show that the estimate was inaccurate by determining exactly how much the bankrupt owed, but since the trustee failed to do this, the referee must allow the claim in full. We think this argument confuses proof of a claim with its allowance.[14]

In passing upon what claims should be allowed or disallowed, the bankruptcy court sits as a court of equity and, as such, is empowered "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295,

12. Although the referee disallowed the Department's claim as a lien claim and relegated it to the status of a tax claim, the district court did not go beyond determining that the Department proved its claim, and then remanded the case for proceedings consistent with its opinion. Since, in our view, the referee could have again disallowed the Department's claim in consistency with the district court's opinion, we have gone right to the issue of allowance in order to prevent any further litigation.

13. After the referee decided that the Department had only a tax claim there was no need to determine the amount of the claim since there was no money to satisfy it.

14. Perhaps a comment made by the Supreme Court in Lesser v. Gray, 236 U.S. 70, at 74, 35 S.Ct. 227, at 228, is pertinent here. There, the Court remarked: "A disallowed claim and a non-provable debt are not identical things; and a failure accurately to observe the distinction has led to confusion in argument."

308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). The referee leaves the impression in his supplemental findings that even if he believed that the department had a valid tax lien, he had the option to disallow it because it represented "nothing more than a penalty for failure to file a tax return." While it is true that courts have long held that section 57(j) of the Act, 11 U.S.C. § 93(j), prohibits the allowance of tax penalties for nonpayment, see e. g., In re Hankey Baking Co., 125 F.Supp. 673 (W.D.Pa., 1954); In re 168 Adams Building Corp., 27 F. Supp. 247 (N.D.Ill.), aff'd, 105 F.2d 704 (C.A.7), cert. den. sub nom. Steinbrecher v. Toman, County Treasurer and County Collector of Cook County, Illinois, 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520 (1939), and that the Supreme Court in Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962), ruled against allowance of tax penalties, even when secured by liens, to say that the Department's entire claim is a penalty does not seem quite accurate. We think perhaps it would be more precise to say that to the extent the claim exceeds the actual taxes due and owing it is "swollen by the inclusion of a forbidden penalty," Gardner v. New Jersey, 329 U.S. 565, 580, 67 S.Ct. 467, 475, 91 L.Ed. 504 (1947), and only to that extent is it non-allowable.

But what are the taxes due and owing? For all we know they could be $7,000.00 or $700.00. The very fact that the bankrupt's actual tax liability is unknown strongly suggests that the Department's claim is in the nature of an unliquidated tax claim rather than an outright penalty. The Department, no doubt, would vehemently object to such a characterization because of its status as a lien claimant, but the possibility that it could have summarily enforced its lien for the full amount under state law had bankruptcy not ensued need not sway the bankruptcy court. If the court, in the exercise of its equitable powers, can look behind a state judgment to determine whether it was part of a planned and fraudulent scheme, Pepper v. Litton,

supra, and if it can disallow a perfected lien for tax penalties, Simonson v. Granquist, supra, we think it can also look behind the formal proof of a tax lien claim, when there has been no prior hearing nor contest, to see whether its amount was computed in a manner calculated reasonably to approximate the bankrupt's actual tax liability.

Here, we have a situation where the Pennsylvania Bureau of Unemployment Contributions and Internal Revenue Service have submitted claims based upon either an examination of the books of the bankrupt or by self-assessed returns filed by the bankrupt. The Department, on the other hand, has submitted a claim based on the bankrupt's 1961 tax return from which, for example, it has estimated that the bankrupt's taxable net income for the period from June 30, 1963 to June 30, 1964, was $11,898.-45. Then, for the next three years it very conveniently estimates the taxable net income to be the same $11,898.45. According to the referee, if these figures are accurate, they "would purport to show that this corporation was solvent." Solvent *vel non*, we cannot help but conclude that when an agency estimates, without examination of books or records for the years assessed, that a corporation sliding toward bankruptcy has the same taxable net income four years running, that estimate is, in reality, nothing more than a guess. And a court of equity will not distribute all the assets in an estate on the basis of a guess.

In In re Monongahela Rye Liquors, 141 F.2d 864, 868 (C.A.3, 1944), (a case very much in point but strangely not cited, much less distinguished, by the Department), this court declared that estimated settlements similar to those in this case were "arbitrarily made," and held under old § 64(a) (4) of the Act that the bankruptcy court had jurisdiction to pass upon and redetermine the Commonwealth's tax claims. Section 64(a) (4) was amended in 1966 by the deletion of the proviso "That, in case any question arises as to the amount or

legality of any taxes, such question shall be heard and determined by the court." Pub.L. 89–496, 80 Stat. 270 (1966). This deletion permitted the basic jurisdictional authorization contained in the proviso to be joined with the other jurisdictional provisions in § 2 by the addition of a new subdivision (2A) to § 2(a) of the Act. 11 U.S.C. § 11(a) (2A) (Supp. IV). Section 2(a) (2A) provides in pertinent part:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title * * * to—

"(2A) Hear and determine, or cause to be heard and determined, *any question* arising *as to the amount* or legality *of any unpaid tax*, whether or not previously assessed, which has *not prior to bankruptcy* been *contested* before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction * * *." (Emphasis added.) 11 U.S.C. § 11(a) (2A) (Supp. IV).

█ We immediately note that this statute makes no distinction between ordinary tax claims and tax claims secured by a lien. It makes clear that the bankruptcy court has jurisdiction to hear and determine any question arising as to the amount of any unpaid tax if that question has not been contested prior to bankruptcy. The fact that a proof of claim has or has not been filed is immaterial. See 1 Collier on Bankruptcy § 2.22A at 214–215 (14th ed. 1967). There is no question here that the corporation taxes are unpaid or that the bankrupt did not contest their amount prior to

bankruptcy. Nor is there any doubt that the statute was designed to cover the instant factual situation;[15] for, as Collier states:

"* * * One type of hazardous situation confronting creditors of a bankrupt is where the bankrupt has little or no interest in contesting, in fact, a tax assessment and permits an adjudication to be taken against him by default prior to bankruptcy. If the default is binding upon the creditors, they, of course, have not had their day in court. Absent bankruptcy, the creditors are not entitled to be heard but where bankruptcy ensues, they do have an interest that is deserving of some protection. They should not be bound by omissions of the bankrupt. The same should be true where the time has run against the bankrupt for contesting the claim. In this situation it is clear that the bankruptcy court may hear and determine the matter; there has been no contest and no adjudication. Where the bankrupt has defaulted instead, there also has been no contest; in actuality, the neglect of the bankrupt is the same, and the language in § 2a(2A) should be read in that light." 1 Collier on Bankruptcy § 2.22A at 215 (14th Ed. 1967).

█ One last point must be made before we remand this case to the bankruptcy court. There is $7,046.50 in the bankruptcy estate, but the claims against it are far in excess of that amount. We think it would be unfair to the two taxing authorities that have gone to the trouble to prepare their claims in such a manner as to reasonably approximate the actual taxes due them to further deplete the estate by requiring the trustee to engage an auditor to go over the bankrupt's books and assist him in preparing a tax return. More to the point, we deem it inequitable under the circumstances to require the trustee to file a tax return, and, in

---

15. Cf. City of Amarillo v. Eakens, 399 F.2d 541 (C.A.5, 1968), cert. denied, 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

effect, do for the Department what it should have done for itself. Accordingly, on remand, the bankruptcy court is instructed to direct the trustee to make available to the Department's auditors all the documents they may need to prepare a claim that will correspond to the actual tax liability of the bankrupt. If the Department does not take advantage of this opportunity and submit a new or amended claim within a reasonable time to be set by the referee, the referee is instructed to distribute the estate in accordance with his initial allocation.

For the reasons set out above, the order of the district court, as herein modified, will be affirmed.