### In re CONTINENTAL CREDIT CORPORATION, Bankrupt.

### Donald H. GEIGER, Receiver, Plaintiff,

v.

### CITY OF SOUTHFIELD, Michigan, Defendant.

#### Bankruptcy No. 77 B 1561.

United States Bankruptcy Court, N. D. Illinois, E. D.

Dec. 18, 1979.

682

Donald H. Geiger, Waukegan, Ill., pro se.

Milton Spokojny, Asst. City Atty. of the City of Southfield, Mich., for defendant.

ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Complaint of Donald H. Geiger, Receiver of the Debtor herein, for the entry of an Order determining that the Defendant, City of Southfield, Michigan, has no valid lien for taxes on proceeds from the sale of certain items of personal property, or for the entry of an Order determining that the value placed on the property by City of Southfield, Michigan for purposes of assessment was excessive and unconscionable and directing the City of Southfield, Michigan, to recompute its lien based upon a revaluation of the said property, and

The Court having examined the pleadings filed in this matter and having received and examined the Stipulation of Facts and having received and examined Memoranda of the parties in support of their respective positions, and the Court having heard arguments of counsel and being fully advised in the premises,

The Court Finds:

1. Continental Credit Corporation, Debtor herein, bought certain computers from Telex Computer Products, Inc., for $161,200.00, $6,200.00 of which was sales tax. The invoice is dated September 10, 1975, and is attached to the Stipulation of Facts as Exhibit "A".

2. Continental Credit Corporation leased this equipment to Computer Services, Inc., located at 23155 Northwestern Highway in Southfield, Michigan.

3. The City of Southfield, Michigan is authorized to assess and collect personal property taxes for all property located within the City of Southfield, Michigan, owned by domestic or foreign corporations.

4. Mich.Comp.Laws Ann. § 211.40 provides, in relevant part:

"Notwithstanding any provisions in the charter of any city or village to the contrary, all taxes shall become a debt due to the township, city, village and county from the owner or person otherwise to be assessed on the tax day provided for in sections 2 and 13 of this act . . ."

Mich.Comp.Laws Ann. § 211.2 provides in part:

". . . The taxable status of . . personal property shall be determined as of each December 31, which shall be deemed the tax day . . . ."

5. On December 31, 1975, and also on December 31, 1976, Continental Credit Corporation was the owner of certain items of personal property located within the corporate limits of the City of Southfield, Michigan, to-wit: the aforesaid computers purchased from Telex Computer Products, Inc.

6. Mich.Comp.Laws Ann. § 211.18 provides in part as follows:

"Each supervisor or other assessing officer . . . shall ascertain the taxable property of his assessing district, and the persons to whom it should be assessed and their residences. For this purpose he shall require every person of full age and sound mind who the supervisor or assessor believes has personal property in his possession to make and subscribe to a true and correct written statement, under oath, administered by such supervisor or assessing officer . . . of all the personal property of such person, firm or corporation, whether owned by him or it or held for the use of another . . . ."

Mich.Comp.Laws Ann. § 211.19 provides: "The written statement under oath, provided for in section 18 shall be in such form and of such content as may be prescribed by the state tax commission and shall be completed and delivered to the supervisor or assessor on or before February 20 of each year."

Mich.Comp.Laws Ann. § 211.22 provides in part:

"If the . . . assessing officer . . shall be satisfied that any statement so made is incorrect, or if, by reason of absence or other cause, said sworn statement cannot be obtained . . ., said . . . assessing officer . . . shall examine, on oath, . . . any other person or persons whom he may have good reason to believe, and does believe has knowledge of the amount or value of any property owned, held or controlled by such person so neglecting or refusing or omitting to be examined or to furnish such statement, and such . . assessing officer is hereby authorized to set down and assess to such person, firm or corporation so entitled to be assessed, such amount of . . . personal property as he may deem reasonable and just. . . . ."

7. The City of Southfield, Michigan, sent to Continental Credit Corporation a 1976 Personal Property Tax Statement form and a 1977 Personal Property Tax Statement form, neither of which was completed nor returned. The assessing officer, therefore, estimated the true cash value of the personal property to be $230,000.00 in 1976 and $500,000.00 in 1977. Mich.Comp. Laws Ann. § 211.27 provides that ". . . property shall be assessed at 50% of its true cash value . . . ." The assessments were therefore made based on values of $115,000.00 for 1976 and $250,000.00 for 1977.

8. For the year 1976, the City of Southfield, Michigan, levied a tax of $60.89 per $1,000.00 of assessed value of personal property, and for 1977, levied a tax of $60.99 per $1,000.00 of assessed value. The assessor applied these rates to the assessed value of $115,000.00 for 1976 and $250,000.00 for 1977, arriving at tax assessments of $7,639.39 and $16,746.15 for the years 1976 and 1977 respectively.

9. Notices of assessment were sent to Continental Credit Corporation in each of the years involved, but no protests were initiated by it.

10. On February 25, 1977, Continental Credit Corporation filed a voluntary petition in bankruptcy and subsequently converted the proceedings to Chapter XI. Donald H. Geiger was appointed Receiver on February 28, 1977.

11. The City of Southfield, Michigan, filed its claim in these proceeding for personal property taxes in the amount of $24,-385.54 and asserted a lien on the subject computers for this amount, pursuant to Mich.Comp.Laws Ann. § 211.40 and § 9.18 of the Southfield City Charter. § 211.40 provides in pertinent part:

" . . . all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount, on all personal property of such persons so assessed from and after the first day of December in each year for state, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city or village, and so remain until paid, which said tax liens shall take precedence over all other claims, encumbrances and liens upon said personal property whatsoever, whether created by chattel mortgage, title retaining contract, execution, or upon any other final process of a court, attachment, replevin, judgment or otherwise, . . . and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade. The personal property taxes hereafter levied or as-

sessed by any city or village shall be a first lien, prior, superior and paramount to any other claims, liens and encumbrances whatsoever upon the personal property assessed as herein provided, any provisions in the charter of such cities or villages to the contrary notwithstanding."

§ 9.18 of the Southfield City Charter provides in part:

" . . . All personal taxes shall also be a first lien, prior, superior and paramount, upon all personal property of the person so assessed from and after the first day of July in each year and shall so remain until paid. Such tax liens shall take precedence over all other claims, encumbrances and liens upon said personal property, whether created by Chattel Mortgage, execution, levy, judgment, or otherwise, and whether arising before or after the assessment of said personal property taxes, and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy the lien, except where the personal property is actually sold in the regular course of retail trade."

12. On August 1, 1977, an appraisal made by William L. Bones, Regional Sales Manager of Telex Computer Products, Inc., was filed with this Court. Mr. Bones valued the equipment therein at $75,000.00.

13. The equipment was sold for $49,-000.00 at auction held in open Court on August 11, 1977, with liens, if any, to attach to the proceeds of sale, pursuant to order of Court. This action was filed several days later challenging the extent and sufficiency of liens asserted by the City of Southfield, Michigan.

The Court Concludes and Further Finds:

■ 1. The bankruptcy court has jurisdiction to redetermine the amount of taxes otherwise legally due and owing, even where, under state law, remedies were available for contesting the tax, which the bankrupt failed to pursue.

§ 2a(2A) of the Bankruptcy Act provides in pertinent part as follows:

" . . . a. The courts of the United States hereinbefore defined as courts of bankruptcy . . . are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act . . . to—

. . . (2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review." 11 U.S.C. § 11(a)(2A) (1976)

The jurisdictional grant of § 2a(2A) was formerly contained in § 64a(4), and prior to 1938, in § 64a. The body of law that developed under these two predecessor sections was to the effect that the bankruptcy court had power to examine into the validity and amount of taxes legally due and owing to a sovereign unless the matter had been previously determined by a state or federal court. 3A Collier on Bankruptcy § 64.407 at 2205–10 (14th Ed. 1967); *New Jersey v. Anderson,* 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); *In re Thermiodyne Radio Corporation,* 26 F.2d 716 (D.Del.1928); *In re E. C. Fisher Corp.,* 229 F. 316 (D.Mass.1915). This power to redetermine the amount of a tax claim existed whether the claim was secured by a lien or not. 3A Collier, *supra* at 2212; *cf. In re Century Vault Company, Inc.,* 416 F.2d 1035, 1040–41 (3d Cir. 1969) (interpreting § 2a(2A)).

While the aforementioned body of law was developing, the courts of the Seventh Circuit were maintaining a contrary view. These decisions primarily held that while the bankruptcy court could examine into the validity of a tax claim, it had no jurisdiction to redetermine the amount where excessive valuations were in dispute. *In re 168 Adams Bldg. Corporation,* 105 F.2d 704 (7th Cir. 1939); *In re Schach,* 17 F.Supp. 437 (N.D.Ill.1936); *In re Gould Mfg. Co.,* 11 F.Supp. 644 (E.D.Wis.1935). It was because of the development of this minority view that a proposal was made during legislative consideration of the Chandler Act that would have strengthened the bankruptcy court's power to redetermine the amount of tax claims. The proposal, however, was not enacted. 3A Collier, *supra,* at 2214–25.

Shortly after the enactment of the Chandler Act, the United States Supreme Court decided *Arkansas Corporation Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941). This case involved a railroad in reorganization proceedings. The Corporation Commission, a state agency vested with complete control over valuation and assessment of property and with full power to summon witnesses and hear evidence, fixed the value of the railroad's property after a hearing in which the trustee participated. The trustee failed to appeal the Commission's order, but four months later he petitioned the bankruptcy court to redetermine the amount of tax owing by revising the property value found by the Commission. *Id.* at 140–41, 61 S.Ct. 888. The court held that the bankrupt was not entitled to a second hearing on the issue of value. *Id.* at 142, 61 S.Ct. 888.

Theretofore the bankruptcy court could not redetermine the amount of a tax claim when the matter had already been passed upon by a state or federal court; the same result would attend when the issue had been determined after due hearing by a quasi-judicial agency. *In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864, 868 (3rd Cir. 1944). The United States Supreme Court has not yet addressed the question as to whether a trustee can obtain a redetermination of value where neither a court nor a quasi-judicial agency has held a hearing and made a determination of the matter. Where there has been no such hearing and determination, the weight of authority is

that the bankruptcy court can examine into the amount or legality of the tax claim.

In 1966, Congress removed the jurisdictional grant to § 2a(2A) and added the following language: ". . . whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal . . . .". The only ambiguity remaining is with regard to the meaning of the word "contested". The 1966 amendment to § 2a was intended to have a remedial effect, strengthening the bankruptcy court's powers and authorities. The Bankruptcy Act, as thus amended, contemplates an actual contest upon hearing and prior to determination, so that the bankrupt's creditors will not suffer for bankrupt's obvious lack of interest in contesting the tax. *In re Century Vault Company, Inc.,* 416 F.2d 1035, 1040–41 (3rd Cir. 1969); *City of Amarillo v. Eakens,* 399 F.2d 541, 543–44 (5th Cir. 1968).

In the instant case, the Bankrupt failed to protest the 1976 and 1977 assessments. There was no contest and no hearing on the issue of value, and therefore this situation falls within the class of cases intended to be reached by § 2a(2A).

The contention of the City of Southfield, Michigan, that the Tax Injunction Act, 28 U.S.C. § 1341, prevents this Court from assuming jurisdiction is without merit. That Act did not abridge the bankruptcy court's power to enter any orders necessary to the enforcement of provisions of the Bankruptcy Act. *California State Board of Equalization v. Goggin,* 191 F.2d 726, 728 (9th Cir. 1951).

The contention of the City of Southfield, Michigan, that this Court lacks jurisdiction because of the Bankrupt's failure to exhaust remedies available under state law must also fail. *See In re Fernandes Super Markets, Inc.,* 3 Bankruptcy Law Rep. (CCH) 67,248 (D.Mass.1979); *City of Amarillo v. Eakens,* 399 F.2d 541, 543 (5th Cir. 1968).

This Court has jurisdiction to determine the amount of taxes due to the City of Southfield, Michigan, for both the years 1976 and 1977.

2. The bankruptcy court, in exercising its power to redetermine the proper taxes due and owing, must ascertain the amount properly due under the laws of the state at the time the assessments were made. Hunt, Tax Claims in Bankruptcy, 14 J. of Nat'l Ass'n of Referees 3, 5 (1939) (citing *In re Seaver-Howland Press,* 16 Am. B.R. (NS) 227); *See City of Amarillo v. Eakens,* 399 F.2d 541, 544 (5th Cir. 1968); *In re Thermiodyne Radio Corporation,* 26 F.2d 716 (D.Del.1928). Under the laws of Michigan, the assessing officer must obtain from each person owning personal property located within his district a written statement containing a description of all such personal property. Mich.Comp.Laws Ann. § 211.18. If he cannot obtain the statement, he is to examine any other person whom he believes has knowledge about the value of the property, and he is authorized to then assess such amount as he may deem reasonable and just. Mich.Comp.Laws Ann. § 211.22. In the instant case, the Bankrupt did not return the Personal Property Tax Statement form for either 1976 or 1977, and the assessor was therefore entitled to examine anyone knowledgeable about the value of the property and to assess an amount deemed reasonable and just.

In determining this amount, the officer would be bound, by Article IX, section 3 of the Michigan Constitution, to determine the "true cash value" of the property. "Cash value" has been defined by the legislature as ". . . the usual selling price at the place where the property . . . is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale." Mich.Comp.Laws Ann. § 211.27. True cash value has been interpreted as synonymous with fair market value. *C.A.F. Investment Co. v. Michigan State Tax Commission,* 392 Mich. 442, 221 N.W.2d 588, 592 (1974).

In ascertaining true cash value, the assessing officer must give reasonable

consideration to any methods established by statute or common law. *Parsons v. Detroit & Canada Tunnel Co.,* 15 F.Supp. 986 (E.D. Mich.1936). The statute itself authorizes consideration of the appraisal made by Mr. Bones pursuant to direction of this Court, as a person who has knowledge about the value of the property. Mich.Comp.Laws Ann. § 211.22. The purchase price paid for property is also a factor to be considered in determining its value for tax purposes. *Davidson v. City of Lansing,* 356 Mich. 697, 97 N.W.2d 592 (1959). The price obtained for the subject computers at the auction conducted in open Court, while not the ordinary and usual measure of price, has probative effect as to the issue of valuation. Further, under one method of valuation used and applied in substantially all jurisdictions in Michigan, the original cost of the property is multiplied by discount factors that take depreciation into account. The attorney for the City of Southfield, Michigan, maintains that this method is only used as an aid in determining assessments where the taxpayer has returned the Personal Property Tax Statement form. No authority is cited in support of this proposition. The multiplier chart is published at 1 State Tax Reporter—Michigan (CCH) ¶ 20–301, and the following language appears above the chart: "Assessors, Equalization Departments and the Tax Commission will use this schedule in the valuation of personal property." Certainly the values obtained through use of this chart will be, at the least, factors to be considered by the bankruptcy court in making a redetermination of the proper taxes due and owing the City of Southfield, Michigan.

There are thus several figures available to the Court for consideration in making the determination: the appraisal by Mr. Bones of Telex Computer Products, Inc.; the figures obtained through use of the multiplier chart; the $49,000.00 sale price; and of course, the City's own appraisals. The written appraisal of $75,000.00 by Mr. Bones is dated July 25, 1977, long after the 1976 assessment, and it should therefore be considered, but with somewhat less effect, in the 1976 valuation. Similarly, the $49,-000.00 sale price was obtained in August of 1977 and should therefore be accorded less weight with regard to the 1976 assessment. The value obtained through use of the multiplier chart is $137,950.00 ($155,000.00 × .89), and the City's appraisal was $230,-000.00 ($115,000.00 S.E.V. × 2). The $49,-000.00 sale price and the $75,000.00 expert appraisal in 1977 indicate that the City's $230,000.00 valuation for 1976 is grossly excessive and that the $137,950.00 value obtained through use of the multiplier chart would be a much close estimate of the true cash value of the property in 1976.

For the 1977 taxes, the City's appraisal of $500,000.00 ($250,000.00 S.E.V. × 2) is again grossly excessive in light of the three other figures available for that year. The figure obtained through use of the multiplier chart is $106,950.00 ($155,000.00 × .69). Yet the $49,000.00 sale price indicates that the $75,000.00 expert appraisal would not be an undervaluation.

Applying the tax rate for 1976 to $68,-975.00 (½ × $137,950.00), and for 1977 to $37,500.00 (½ × $75,000.00), the proper tax assessments for the years 1976 and 1977 would be $4,199.89 and $2,287.13, respectively.

3. A statutory lien is valid in bankruptcy if perfected under applicable lien law as against a hypothetical bona fide purchaser, but if the lien is unaccompanied by possession, it must be postponed in payment to the debts specified in clauses (1) and (2) of § 64a.

The City of Southfield, Michigan, has a valid lien for the 1976 tax claim but not for the 1977 claim. Under the laws of the State of Michigan, all taxes on personal property become a debt due on "tax day", which is December 31st of the year preceding the tax year. A lien for those taxes arises on December 1st in each year, or on such other day as may be provided for by city charter. Mich.Comp.Laws Ann. § 211.-40. The Southfield City Charter has provided that the lien for personal taxes shall arise on July 1st. Southfield City Charter, § 9.18—Taxes Lien on Property.

■ With regard to the 1976 taxes, the relevant "tax day" was December 31, 1975. On that date, the taxes became a debt due to the City, and a lien arose the following July 1, 1976. This lien was a valid statutory lien under § 67c(1)(B), which provides in pertinent part as follows:

" . . . c. (1) The following liens shall be invalid against the trustee:

.    .    .    .    .

. . . (B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such a purchaser exists . . .." 11 U.S.C. § 107c(1)(B)(1976)

While under old § 67c(2), statutory liens on personalty unaccompanied by possession, levy, sequestration, or distraint were invalid as against the trustee, the basic test since the 1966 amendment quoted above is whether, under applicable state or federal law, the lien is perfected as against a hypothetical bona fide purchaser. *In re Century Vault Company, Inc.,* 416 F.2d 1035, 1038 (3rd Cir. 1969); 4 Collier, *supra* at 303.

■ The lien for the 1976 taxes, which arose on July 1, 1976, was a specific and perfected lien. Once the lien arose, nothing further had to be done to perfect it. *In re Ever Krisp Food Products Co.,* 307 Mich. 182, 207, 11 N.W.2d 852 (1943). Moreover, the lien was perfected as against a bona fide purchaser, *Id.* at 199–200, 11 N.W.2d 852; Biennial Report of the Att'y Gen., Mich. 1930–32, Pp. 106–09, and is therefore valid as against the trustee in bankruptcy. While it is valid as against the trustee, it will nevertheless be postponed in payment to the debts specified in clause (1) and (2) of § 64a. § 67c(3) provides that all tax liens on personal property unaccompanied by possession are to be postponed in payment to the above-mentioned debts.

■ The City has no valid lien for the 1977 taxes. The relevant tax day was December 31, 1976. On that day, the taxes became a debt due to the City, but a lien for those taxes would not attach until July 1, 1977, long after the date of bankruptcy. *United States v. State of Michigan,* 429 F.Supp. 8, 10–11 (E.D.Mich.1977); Biennial Report of the Att'y Gen., Mich. 1930–32, Pp. 106–09. As there was no lien at the date of bankruptcy, the 1977 tax claim is relegated to a fourth priority under § 64a(4), 11 U.S.C. § 104a(4) (1976).

■ 4. A governmental creditor with a claim for taxes may receive interest on that claim only until the date of bankruptcy, and this rule applies even where the creditor has a valid and perfected statutory lien for those taxes.

■ The United States Supreme Court held in *New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), that tax claims against a bankrupt bear interest only until the date of bankruptcy. There are three exceptions to this rule, one of which states that a secured creditor may receive post-bankruptcy interest if the proceeds from sale of his security are sufficient to cover the additional interest. *Palo Alto Mutual Savings and Loan Ass'n v. Williams,* 245 F.2d 77, 79 (9th Cir. 1957). A number of courts have ruled, however, that this exception should apply only to consensual lienors and should not be extended to statutory liens for tax claims. *In re Kerber Packing Company,* 276 F.2d 245, 247–48 (7th Cir. 1960). The City, therefore, should receive interest only to the date of bankruptcy on both the 1976 tax claim, which is secured by a lien, and on the unsecured 1977 claim.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the proper taxes concerning the subject computers due and owing by Continental Credit Corporation, Debtor herein, to the City of Southfield, Michigan, for the year 1976 are $4,199.89 plus statutory interest to February 25, 1977.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the lien of the City of Southfield, Michigan, for taxes for the year 1976 is valid as against the Receiver in Bankruptcy and the Debtor, Continental Credit Corporation, herein, but

shall be postponed in payment to the debts specified in clauses (1) and (2) of § 64a of the Bankruptcy Act, 11 U.S.C. § 104a.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the proper taxes concerning the subject computers due and owing by Continental Credit Corporation, Debtor herein, to the City of Southfield, Michigan, for the year 1977 are $2,287.13 with interest to February 25, 1977.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the lien of the City of Southfield, Michigan, for taxes for the year 1977 is invalid as against the Receiver in Bankruptcy, and the Debtor, Continental Credit Corporation, herein.