(INSTANCE COURT.)

## The SAN PEDRO—*Valverde*, Claimant.

Under the judiciary act of the 24th of September, 1789, ch. 20., and the act of the 3d of March, 1803, ch. 93., causes of admiralty and maritime jurisdiction, or in equity, cannot be removed, *by writ of error* from the circuit court for re-examination in the supreme court.

The appropriate mode of removing such causes, is by *appeal:* and the rules, regulations, and restrictions contained in the 22d and 23d sections of the judiciary act, respecting the time within which a writ of error shall be brought, and in what instances it shall operate as a *supersedeas;*—the citation to the adverse party, the security to be given by the plaintiffs in error for prosecuting his suit, and the restrictions upon the appellate court as to reversals in certain enumerated cases, are applicable to appeals under the act of 1803, and are to be substantially observed ; except that where the appeal is prayed at the same term when the decree or sentence is pronounced, a citation is not necessary.

ERROR to the superior court of the Mississippi territory,

This was a libel of information filed in that court, against the schooner San Pedro and cargo, alleging, 1st. That the San Pedro departed, on the 1st February, 1813, from Mobile for the island of Jamaica, a colony of Great Britain, in violation of the embargo act of the 22d December, 1807, and the several acts supplementary thereto ; of the non-intercourse act of the 1st of March, 1809 ; and of the laws of the United States. 2d. That sundry goods, wares, and merchandise were imported in the San Pedro, into

the district of Mobile on the first day of May, 1813, from the said island of Jamaica, in violation of the non-intercourse act. 3d. That sundry goods, wares, and merchandise " were *intended to be imported* in the San Pedro, from the said island of Jamaica, into the United States, and into the district of Mobile, contrary to the provisions of the non-intercourse act," &c.

The San Pedro was originally a vessel of the United States, called the Atlas, and the property of Mr. Philip A. Lay, of New-Orleans; but had given up her register, and (as alleged) was transferred to Mr. Valverde, a Spanish subject, resident at Pensacola. On the 1st of February, 1813, she sailed from Mobile, with a cargo of cotton and tobacco, for Jamaica, which was disposed of there; and on the 10th of April, 1813, she sailed from Jamaica, with a cargo, on her return voyage for the coast of Florida. On the 23d of April she was captured and brought into Mobile by an American gun-boat, and on the 29th of the same month was liberated by the commander of the flotilla, and seized by the collector of the port, in whose name the libel was filed. It was contended by the libellants that the transfer of the vessel was collusive and fraudulent, and that she, together with the cargo, belonged to citizens of the United States.

A claim was interposed on behalf of Mr. Valverde, and the vessel and cargo were decreed to be restored in the court below, from which decree the cause was brought *by writ of error* to this court.

The *Attorney General*, for the United States, ar-

Feb. 13th.

1817.
The San
Pedro.

gued in support of the first count in the libel, that the non-intercourse act was to be considered as in force after the declaration of war, being cumulated upon the law of war as administered in the prize court, by which all trade and intercourse with the enemy is prohibited, under the penalty of confiscation. It therefore became immaterial whether the property was Spanish, or belonged to citizens of the United States. If Spanish, it was confiscable as the proper-ty of neutrals, trading with a British colony from the United States, contrary to the non-intercourse. If the property of citizens of the United States, it was lia-ble to seizure and condemnation, being taken in trade with the public enemy. The general allegation in this count, of a breach of the laws of the United States, was sufficient to cover the latter offence. Mobile was, at the time of this transaction, a port in pos-session of the United States, having been annexed to their territories by the acts of Congress of the 14th of May, 1812, and the 12th of February, 1813.

Mr Harper, contra. 1. The embargo laws had ceased to exist at the time of this transaction, and therefore the first count in the libel, alleging a breach of those laws, cannot be supported. 2. The non-intercourse laws had merged in the act declaring war. By the law of war, all commercial intercourse with the enemy is prohibited, and the court has con-sidered the laws, restricting trade, as superseded by the law of war.

[Mr. Chief Justice MARSHALL. The court has

never considered the non-intercourse law as merged in the law of war as to *neutrals.*]

*Mr. Harper.* 3. But supposing the non-intercourse laws to be in force, they can only apply in two cases. First—To British goods put on board with an intention to import the same into the United States. Secondly—To British goods actually imported. The third count of the libel is fatally defective in alleging, not that *they were put on board* with intention to import, &c. but that they *were intended to be imported;* and under the second count there is no proof of the growth, produce, or manufacture of the goods. If a presumption arises of their *British* origin, from the circumstance of their being laden in a *British* colony, it is a case of farther proof, and the court will not condemn without first allowing the claimants an opportunity to repel that presumption. 4. The act of Congress of the 12th February, 1813, did not, *proprio vigore,* make the port and district of Mobile the territory of the United States. The legal right ought to have been asserted by actual possession, in order to consummate the title.[a] But possession was not taken until *after* the sailing of the vessel from Mobile, although *before* her return to the coast of Florida from Jamaica; and there is no proof that

***

[a] See, on this subject, an instructive case in 5 *Rob.* 97. (The Fama,) in which Sir William Scott determined that the national character of Louisiana, agreed to be surrendered by the treaty of St. Ildefonso, in 1795, by Spain to France, but not actually transferred, continued as it was under the ceding country.

1817.

The San
Pedr~

this change of dominion was known to the parties when the goods were shipped at Jamaica. 5. The question, whether the ship and cargo are confiscable as a droit of admiralty for the offence of trading with the enemy, depends upon the question of fact, whether they are the property of a citizen or a neutral; and it being an admiralty cause, the claimants are entitled to the privilege of farther proof, if there be doubt upon the fact. 6. There is a fatal irregularity in form in bringing up the cause by *writ of error*, which is a common law process, not applicable to admiralty or chancery causes, which are to be brought up by appeal under the judiciary act of the 24th February, 1789, and the act of the 3d March, 1803.

The *Attorney General*, in reply. The laws of non-intercourse were no farther merged in the law of war, than as concerned captors. If the property be that of a *citizen*, it is confiscable as a droit of admiralty under the law of war.[b] If it be *neutral*, then

---

*b* 8 *Cranch*, 382. The *Sally*. In that case it was determined, that the municipal forfeiture, under the non-intercouse act, of enemy's property, or of the property of citizens taken in a trade with the enemy, was absorbed in the more general operation of the law of war, and that the prize act of the 26th June, 1812, ch. 107, operates as a grant from the United States, of all property rightfully captured by commissioned privateers, as prize of war. The same doctrine had been before settled by Sir William Scott, in the case of the *Nelly*, (1 *Rob.* 219; in a note to the *Hoop*,) where the court held that the same course of decisions, which had established that the property of a subject taken trading with the enemy is forfeited, has decided also that it is forfeited as prize. The ground of the forfeiture is, that it is taken adhering to the enemy, and therefore the proprietor is, *pro hac vice*, to be considered as an enemy. In

1817.

The San
Pedro.

the non-intercourse act still applies to it, and it must be confiscated under the seizure by the revenue officers. If the port of Mobile had become, *de facto*, a possession of the United States, before the offence of importation was committed, it is immaterial whether the party had a previous knowledge of this tranfer of territory or not; and the fact of the goods coming from a British port, is conclusive evidence of their origin, and ought to exclude farther proof on this point.

Mr. Justice Washington delivered the opinion of the court.

March 1st.

This is an admiralty case brought into this court from the superior court of the Mississippi Territory by writ of error, and a preliminary question has been made, and is now to be decided, whether this is the proper process for removing a cause of admiralty and maritime jurisdiction into this court for re-examination? A similar objection has been taken in a number of equity cases standing on the docket, removed into this court by similar process from the circuit courts. The questions which these objections have given rise to, resolve themselves into the two follow-

the case of the *Etrusco*, the lords of appeal had reserved the question, whether the property claimed by a British subject should be condemned to the crown or the captors; but the illegality of trade in that case was of a different nature, that being a trade in viola-tion of the charter of the East India Company. It was finally determined by the lords in the Etrusco, that the property should be condemned, not to the individual captor, but to the king. 4 *Rob.* 256. The Caroline, in a note.

ing: 1. Whether the decree or sentence of a circuit court, in cases of equity and of admiralty and maritime jurisdiction, can be removed into the supreme court for re-examination, by writ of error? 2. If they cannot, then by what rule are appeals in those cases to be governed?

In deciding these questions, our attention is confined to a few sections of the act of the 24th September, 1789, ch. 20., and to the 2d section of the act of March 3, 1803, ch. 93.

The 22d section of the former of these laws declares, that from any final judgment or decree in civil actions and suits in equity brought in a circuit court by original process, or removed there from a state court, or by appeal from a district court, a writ of error may be brought to the supreme court, at any time within five years, the citation being signed by a judge of such circuit court, or by a justice of the supreme court, and the adverse party having at least thirty days notice. This section, then, provides that the judge who signs the citation shall take sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs, if he fail to do so. The 23d section declares under what circumstances a writ of error shall operate as a supersedeas.

The act of 1803 declares, that from all final judgments or decrees in a circuit court in cases of equity, of admiralty and maritime jurisdiction, and prize or no prize, an appeal shall be allowed to the supreme court; that a transcript of the libel, bill, answers, depositions, and all other proceedings in the cause

1817

The San Pedro.

shall be transmitted to the supreme court, and that no new evidence shall be admitted on such appeal, except in admiralty and prize causes. The act then provides, that such appeals shall be subject to the same rules, regulations, and restrictions, as are prescribed by law in cases of writs of error, and it repeals so much of the 19th and 22d sections of the act of 1789 as comes within the purview of this act.

1. The first question depends upon the meaning attached by the legislature to the word *purview*. It is contended by the plaintiff in error, that it ought to be confined to such parts of the 19th and 22d sections as are inconsistent with the provisions of the act of 1803. If this be the correct interpretation of the term, it is then insisted that there is no incongruity between the two remedies, by appeal and writ of error, even in admiralty and equity cases, and, consequently, that the former remedy is to be considered as merely cumulative

But the court does not yield its assent to that interpretation. Wherever this term is used, it is manifestly intended to designate the enacting part or body of the act, in contradistinction to the other parts of it, such as the preamble, the saving, and the proviso. And an attentive consideration of the subject matter of the two laws, to which our inquiries are confined, will lead very strongly to the conclusion, that congress meant to use the term in this sense. It is obvious that the 22d section of the act of 1789, was so intimately connected with the 19th section, so far as it respected the appellate jurisdiction of the supreme court, in admiralty and equity cases, that the remedy

1817.

The San
Pedro.

provided by the former would have been, in most cases, inoperative without the aid of the latter. Had the law merely provided the remedy by writ of error in those cases, nothing but the proceedings, together with the sentence or decree, would have been open to the inspection and re-examination of the supreme court. But, as in a great majority of those cases, the correctness or incorrectness of the decision of the inferior court would depend upon the *evidence* given in the cause, the remedy by writ of error, without some further legislative provision for carrying before the appellate court the facts or the evidence, would have been altogether defective and illusory. We find, accordingly, that the 19th section provides, that the circuit courts, in cases of equity and of admiralty and maritime jurisdiction, shall cause the facts on which they found their sentence or decree fully to appear upon the record, either from the pleadings and decree itself, or a case agreed by the parties, or their counsel, or if they disagree, by a stating of the case by the court. Thus, upon a writ of error in equity and admiralty cases, the supreme court was furnished with the facts upon which the inferior court decided, though not with the evidence, and might, therefore, correct the errors of that court, so far as they existed in wrong conclusions of law, from the facts stated.

Now the 19th section contains but the single provision which has been just mentioned, and, consequently, if any part of it be repealed by the act of 1803, the whole must be; and if the whole, then the writ of error provided by the 22d section in admi-

ralty and equity cases would be rendered, as before observed, altogether ineffectual for the purpose for which it was intended in every case where the error complained of in the sentence, or decree, existed in wrong conclusions from the evidence or the facts.

Even the provisions of the 29th section were, in the view of congress, defective, and must appear so to every person conversant with the practice of courts proceeding according to the forms of the civil law. The error of the inferior court may frequently consist, not in wrong conclusions of law from the facts, but in wrong conclusions of fact from the evidence. We are warranted in saying that this defect in the former law was perceived by the legislature, and was intended to be remedied by the provision in the act of 1803, that the evidence (instead of the facts) should accompany the record into the appellate court.

Upon the whole, it is manifest that the subject of the two laws is the same, namely, the appellate jurisdiction of the supreme court, and the manner of exercising it. The manner of exercising it, as prescribed by the act of 1789, is essentially changed by the act of 1803, and is consequently repealed by it because it is within the purview of the latter law, being provided for in a different way. By this construction, the appellate jurisdiction of the supreme court is made to conform with the ancient and well-established principles of judicial proceedings. The writ of error, in cases of common law, remains in force, and submits to the revision of the supreme

court only the law.   The remedy by appeal is confined to admiralty and equity cases, and brings before the supreme court the facts as well as the law.

2. The second question is attended with much less difficulty.   The act of 1803, after requiring that the libel, bill, answers, depositions, and all other proceedings in the cause, shall be transmitted to the supreme court, and that no new evidence shall be admitted on such appeal except in admiralty and prize causes, provides that such appeals shall be subject to the same rules, regulations, and restrictions, as prescribed in cases of writs of error.   These rules, regulations, and restrictions, are contained in the 22d and 23d sections of the act of 1789, and respect the time within which a writ of error may be brought, and in what instances it shall operate as a supersedeas : the citation to the adverse party; the security to be given by the plaintiff in error for prosecuting his suit; and the restrictions upon the appellate court as to reversals in certain enumerated cases.   All these are, in the opinion of a majority of the court, applicable to appeals under the act of 1803, and are to be substantially observed, except that where the appeal is prayed at the same term when the decree or sentence is made, a citation is not necessary.   (Reily v. Lamar and others, 2 Cranch, 349.)   It follows that an appeal, in admiralty, equity, and prize causes, may be taken at any time within five years from the final decree, or sentence being pronounced, subject to the saving contained in the 22d sect. of the act of 1789, which is one of the points that was discussed at the bar.

This opinion is consistent with the case of the United States v. Hooe, (3 Cranch, 73.) although from the report of that case it would seem to be otherwise. The record has been examined, from which it appears that that case came up upon an appeal, and not upon a writ of error.

The writ of error, in this case, must therefore be dismissed.[a]

a The cause was afterwards re-entered, *by consent of parties*, and continued for farther proof, as if it had been removed by appeal.