**In re Lois TAPP, Debtor,**

**Lois TAPP, Plaintiff,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Defendant.**

Bankruptcy No. 4–81–0001.

United States Bankruptcy Court, D. Alaska.

Dec. 31, 1981.

316

Thomas E. Fenton, Fairbanks, Alaska, for plaintiff, Lois Tapp.

Terrence H. Thorgaard, Asst. Borough Atty., Fairbanks, Alaska, for defendant, Fairbanks North Star Borough.

MEMORANDUM OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

Plaintiff-Debtor Lois Tapp, as an individual, filed a voluntary petition in bankruptcy on December 5, 1980. Her statement of liabilities listed the Fairbanks North Star Borough (Borough) as holding a claim for approximately $40,000, for retail sales taxes. That claim, upon which the Borough had received judgment in the Alaska Superior Court, concerned sales tax liabilities arising from a business which was formerly operated by Lois Tapp and/or her husband as an unincorporated entity and which was later incorporated. On January 28, 1981, Lois Tapp filed a complaint in the instant action to determine the dischargeability of the sales taxes, arguing both that she is not individually liable for any taxes owed by the corporation and that all debts for which she is liable to the Borough are dischargeable in bankruptcy. The Borough has responded that the matter of liability has been settled by the State court judgment, that Mrs. Tapp is liable for taxes owed by the corporation because as an officer of the corporation she converted property of the Borough, and that Bankruptcy Code § 523(a)(1)(A), 11 U.S.C. § 523(a)(1)(A), bars discharge of the sales tax obligation.

Having considered the arguments of the parties and the evidence adduced at trial in support thereof, this Court finds that all sales tax obligations for which Lois Tapp is individually liable and which accrued before December 5, 1977, are dischargeable in bankruptcy, and that Lois Tapp is not individually liable for sales tax obligations arising from the operation of the business and which accrued after the incorporation on April 23, 1976.

*I. Findings of Fact*

The testimonial and documentary evidence adduced at trial show the following to be the material facts in this litigation:

In 1966, Lois Tapp's then-husband Eugene Tapp commenced operation of the Mukluk Shop, a retail sales shop, within the boundaries of the Borough. Eugene Tapp started the operation as the sole proprietor. Lois Tapp began to work at the shop sometime during 1967.

Lois and Eugene Tapp were divorced on June 14, 1976. The divorce decree adopted a property settlement agreement which had been executed by the husband and wife on April 16, 1976. Pursuant to the terms of the settlement, Eugene Tapp transferred to Lois Tapp all of his right, title and interest in the Mukluk Shop, thereby making her the sole proprietor of the business. The testimony of Lois Tapp establishes that pursuant to the agreement she assumed all outstanding obligations of the business, including any sales tax obligations owing to the Borough.

The Mukluk Shop, Inc., was incorporated pursuant to Alaska law on April 23, 1976, on which date a certificate of incorporation was issued. The corporation was registered with the Borough as a retail seller from at least January 11, 1977. In December of 1978, the Borough brought suit in the Superior Court for the Fourth Judicial District of Alaska for the recovery of sales taxes allegedly collected at the Mukluk Shop during the years 1975 through 1978. Named as defendants were "Eugene Tapp and Lois Tapp dba Mukluk Shop." On January 11, 1979, the Clerk of the Superior Court entered a default judgment against Lois Tapp for $36,180.46 for taxes and penalties, plus costs and attorney's fees of $2,554.02. Lois Tapp never appeared, answered or in any way attempted to defend in that action.

No facts were adduced at trial concerning the manner in which the Mukluk Shop, Inc. conducted its business affairs. No attempt was made to show if and/or how sales taxes were collected, by whom they were collected, where or how they were held by the corporation, or their final disposition. No attempt was made to show who were the officers and/or employees of the corporation during the relevant period.

*II. The Authority of the Bankruptcy Court to Determine Lois Tapp's Tax Liability and its Dischargeability*

A preliminary question to be faced involves the authority of this Court, in light

of the prior state court default judgment concerning Lois Tapp's tax liability, to determine the amount and dischargeability of Lois Tapp's liability for taxes and penalties. The Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and precedents decided under § 17 of the Bankruptcy Act of 1898, former 11 U.S.C. § 35, make clear this Court's power to determine the amount of taxes and penalties owing, despite a prior default judgment in State court on the same question.

 The question of dischargeability of a debt in bankruptcy is a question of Federal law, governed by § 523 of the Bankruptcy Code.[1] A State court judgment entered prior to the filing of a bankruptcy petition and concerning liability for a debt, even where both parties appeared and litigated, does not prevent the Bankruptcy Court from determining the dischargeability of that judgment, especially where the issue relating to dischargeability was not litigated in State court. *Brown v. Felsen*, 442 U.S. 127, 138–139, 99 S.Ct. 2205, 2212–2213, 60 L.Ed.2d 767 (1979); *Matter of Pigge*, 539 F.2d 369, 372 (4th Cir. 1976). Even where issues relevant to the dischargeability question were litigated in State court prior to the debtor filing a bankruptcy petition, the Bankruptcy Court is not precluded from re-examining those issues in making its determination. *Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392, 396 (9th Cir. 1979); *Spilman v. Harley*, 656 F.2d 224, 227–228 (6th Cir. 1981). Where, as here, the State court judgment was rendered on the debtor's default and no issues relating to dischargeability were determined, this Court has the authority and the duty to hear all evidence and arguments in making its dischargeability determination.

 A more difficult question involves the authority of this Court to determine the amount and validity of taxes and penalties owed by Lois Tapp to the Borough, where a state court has previously rendered a default judgment as to that matter. The dispositive statutory authority is § 505 of the Bankruptcy Code, which reads in pertinent part as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The Court may not so determine—

(A) the amount or legality of a tax, fine, penalty or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; . . .

. . . .

The question for determination is whether Congress intended that a tax liability which was the subject of a default judgment in a State court be considered one which "was contested before and adjudicated by" a judicial tribunal within the meaning of § 505(a)(2)(A).

Judicial interpretation of the predecessor of § 505 indicates that Congress did not consider a default proceeding to be a contest which would prevent the bankruptcy court from determining the amount or validity of a tax. Section 2(a)(2A) of the Bankruptcy Act of 1898, former 11 U.S.C. § 11(a)(2A), established a test for bankruptcy court power identical to that established by § 505(a), at least with respect to unpaid taxes.[2] Courts, in determining the

---

1. The Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of debts under § 523(a)(2), (4), and (6), and concurrent jurisdiction as to the remaining subsections. 11 U.S.C. § 523(c) and 28 U.S.C. § 1471.

2. Section 2(a)(2A) granted the bankruptcy court authority to:

Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and

meaning of the phrase "contested before and adjudicated by" in Section 2(a)(2A), found the debtor's appearance and actual litigation before a competent tribunal necessary to preclude bankruptcy court determination of the issue. *In re Century Vault Company, Inc.*, 416 F.2d 1035, 1040–1041 (3rd Cir. 1969); *City of Amarillo v. Eakens*, 399 F.2d 541, 543–544 (5th Cir. 1968), *cert. denied* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969). Courts and commentators have recognized as the policy behind this rule an intent to protect the creditors of a defaulting debtor. General creditors, who would have had no opportunity to be heard in the default proceeding, would often be the parties in fact harmed by a debtor's inability to discharge the tax obligations. These creditors should not be bound by the inaction of a debtor who, as long as the value of his non-exempt property exceeded the amount of the tax obligation, likely had little actual stake in the outcome. *See* 1 Collier on Bankruptcy § 2.22A at 220 (14th Ed. 1976); *In re Century Vault Company, Inc., supra,* 416 F.2d at 1041.

■ The legislative history of § 505 makes clear that Congress did not intend a default judgment to preclude the bankruptcy court's determination of the amount and validity of State taxes and penalties. The version of § 505 which passed the House in February of 1978 retained the language of § 2(a)(2A) of the Bankruptcy Act, barring bankruptcy court determination only where the tax had been previously "contested before and adjudicated by" a judicial or administrative tribunal.[3] But after the bill had reached the Senate, the Senate Finance Committee amended the section to bar the bankruptcy court from making a determination whenever a judicial or administrative tribunal had previously "determined" the tax liability.[4] The Finance Committee's

adjudicated by a judicial tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.

**3.** Section 505 of H.R. 8200, 95th Cong. 2d Sess., passed by the House on Feb. 1, 1978, read as follows:

§ 505. Determination of tax liability
(a) The court may determine the amount or legality of any unpaid tax, whether or not previously assessed, that has not been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.
. . . .

**4.** § 505 of S. 2266, 95th Cong. 2d Sess., passed by the Senate on Aug. 10, 1978, read, in pertinent part, as follows:

§ 505 Determinations of tax liability.
(a)(1) For purposes of determining any tax liability of the estate or of the debtor:
(A) The court in a case under this title may determine the liability of the debtor or the estate for—
(i) any tax, whether or not previously assessed or paid; and
(ii) the amount of any offset or counterclaim to or net overpayment of, the same tax for the same taxable period.
(B) The court may not make any determination referred to in subparagraph (A) concerning a tax incurred before the earlier of the order for relief or, in an involuntary case, the appointment of a trustee, if—

(i) before such determination, a judicial or administrative tribunal of competent jurisdiction has determined any such liability;
. . . .
(b)(1) The debtor in a case under chapter 7 or 13 of this title may apply to the court for a determination of his personal liability for any tax or customs duty excepted from discharge under paragraphs (1) and (7) of section 523(a) of this title, except that this sentence shall apply to a tax or duty excepted from discharge under subparagraph (B) or (C) of paragraph (1) of such section only if the governmental unit filed a proof of claim therefor. If the debtor makes proper application under this subsection, the court, after notice and a hearing, shall determine whether the tax or duty is dischargeable and, if nondischargeable, the extent of the debtor's personal liability therefor, including, where appropriate, a decision on the merits of the tax liability at issue. Whenever a judgment under this subsection becomes final, it shall be binding and conclusive on the governmental unit and on the debtor.
. . . .
(2) Notwithstanding any other provision of this sub-section, no determination of the merits of the tax liability may be made under this subsection if—
(A) a judicial or administrative tribunal of competent jurisdiction has previously determined the debtor's personal liability for the same tax; or
(B) the debtor has previously, with respect to the same tax—

stated purpose in proposing this amendment was to change existing law in order to foreclose an examination by the bankruptcy court where a prior default judgment had been rendered:

> The committee amendment does not adopt the provision in present law that the bankruptcy court can rule on the merits of a debtor's pre-petition tax liability even though a prior adjudication of the same liability has occurred, if the prior judgment was entered by default of the debtor. Under the amendment, any prior adjudication by a court of competent jurisdiction, including a default judgment, would foreclose an initial examination of the liability by the bankruptcy court.

Senate Rep.No.1106, 95th Cong. 2d Sess. (1978), Calendar No. 1026 at 10.

The House rejected this amendment attempt by the Senate. In the final version of H.R. 8200, enacted by the House on September 28, 1978, § 505 was re-written in the form in which it now stands, *supra*, at p. 318. The final version restores the "contested before and adjudicated by" language eliminated by the Senate in its attempt to restrict the bankruptcy court's authority. The Congressional Record makes explicit that the Senate amendment was rejected and a compromise position adopted. 124 Cong.Rec. H 11,110–11,111 (daily ed. Sept. 28, 1978); S 17,426–17,428 (daily ed. Oct. 6, 1978).

The above-outlined sequence of events renders inescapable the conclusion that Congress intended the final version of § 505 to continue the bankruptcy court's authority to determine the amount and legality of a tax, even where those issues had already been determined by default judgment. The phrase "contested before and adjudicated by" was intended by Congress to exclude default judgments.

■ A final reason to read the "contested before and adjudicated by" language to ex-

clude default judgments arises from the intrinsic language of the statute. It is a well known maxim of statutory construction that all words and provisions of a statute are intended to have meaning and are to be given effect, and that words of a statute are not to be construed as surplusage. *Wilderness Society v. Morton,* 479 F.2d 842, 856–857 (D.C.Cir.), *cert. denied* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973); *United States v. Marubeni America Corp.,* 611 F.2d 763, 767 (9th Cir. 1980). Congress must have intended the "contested before" language of § 505 to add a requirement in addition to the requirement that the cause have been "adjudicated by" a competent tribunal. The most reasonable interpretation of the requirement of a contest is that it contemplates that the defendant appeared before the tribunal to defend the action.

To summarize, the judicial interpretation given the predecessor of § 505, and the legislative history and language of § 505 compel this court to hold that a tax liability for which judgment was granted in State court by default was not "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction," within the meaning of § 505(a)(2)(A).

Having determined that Congress intended by § 505 to authorize the Bankruptcy Court to determine the amount and legality of tax liabilities despite a prior default judgment in State court, this Court must now determine whether Congress was empowered to make that authorization. The question is whether the requirement that a court give full faith and credit to the judgments of a court of another jurisdiction prevents Congress from making the grant of power made to the Bankruptcy Court in § 505.

■ Full faith and credit, as applied to the Federal courts, is a statutory and not a constitutional doctrine. Article IV, § 1 of the U. S. Constitution by its terms binds

---

(i) filed a petition in the United States Tax Court or initiated a proceeding in a similar judicial or administrative tribunal under State or local law; or

(ii) paid the tax in full to the governmental unit having authority to collect or receive payment of such tax.

only the States.[5] Congress has imposed the full faith and credit requirement upon Federal courts by statute, 28 U.S.C. § 1738.[6] *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980); *Davis v. Davis*, 305 U.S. 32, 39–40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1939).

 Since the full faith and credit requirement is imposed on federal courts by Congressional statute, that requirement can be modified by Congressional statute. Where a subsequently enacted statute conflicts with a prior act, the latter overrides the former to the extent necessary to allow for the operation of the latter. *Silver v. New York Stock Exchange*, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963); *The San Pedro*, 2 Wheat. 132, 141, 4 L.Ed. 202 (1817); 1A Sutherland, Statutes and Statutory Construction § 23.09 (4th ed. 1972). Though this so-called repeal by implication is not favored, the doctrine will be applied where there is sufficient evidence of the intent of Congress in enacting the later statute. *United States v. Yuginovich*, 256 U.S. 450, 463, 41 S.Ct. 551, 553–554, 65 L.Ed. 1043 (1921).

 The legislative history of § 505, summarized at pp. 319–320, *supra,* clearly shows the intent of Congress to authorize the Bankruptcy Court to determine the amount and validity of a tax, even where a State court has rendered a default judgment as to that issue. To the extent that such authorization would be barred by 28 U.S.C. § 1738, that section is overridden by 11 U.S.C. § 505. There is no constitutional or statutory bar to the exercise of Congressional power represented in § 505 of the Bankruptcy Code.

## III. *Lois Tapp's Tax Liability and its Dischargeability*

 Pursuant to the property settlement agreement executed on April 15, 1976, by Eugene Tapp and Lois Tapp, Lois Tapp assumed all of the then-existing sales tax liabilities arising from the operation of the Mukluk Shop. Also, it is clear that Lois Tapp is individually liable for all sales tax liabilities arising between April 15, 1976, and the date of incorporation of the Mukluk Shop., Inc., on April 23, 1976.[7] The questions in dispute concern whether Lois Tapp's individual liability is dischargeable in bankruptcy, and the extent to which Lois Tapp may be held individually liable for sales tax obligations arising out of the operation of the incorporated business.

The Borough argues that Lois Tapp's individual liability is non-dischargeable, pursuant to § 523(a)(1)(A), of the Bankruptcy Code, 11 U.S.C. § 523(a)(1)(A), which provides as follows:

§ 523 Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

---

**5.** Art. IV, §·1 of the U. S. Constitution reads:

Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

**6.** 28 U.S.C. § 1738 reads:

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**7.** AS 10.05.261 states:

Upon the issuance of the certificate of incorporation, the corporate existence begins. The certificate of incorporation is conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated . . .

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed;

. . . .

The Borough asserts that the retail sales tax falls within § 507(a)(6)(C). That section states:

(a) The following expenses and claims have priority in the following order:

. . . .

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for— \

. . . .

(C) A tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

. . . .

Since § 507(a)(6)(C) prescribes no limitations period, the Borough argues, Mrs. Tapp's entire liability is non-dischargeable.

The Borough's contention fails because the priority, and through § 523(a)(1)(A), dischargeability, of its retail sales tax claim is governed not by § 507(a)(6)(C), but rather by § 507(a)(6)(E), which reads as follows and deals with:

an excise tax on—

(i) A transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

Pursuant to the three year limitations period of this section, Mrs. Tapp's liability for all sales taxes for which a return was due before December 5, 1977, is dischargeable.

 The language of § 507(a)(6) and its legislative gloss require that retail sales taxes be grouped within sub-section (E). The common meaning of "excise" is understood to include sales taxes:

Excise. A tax imposed on the performance of an act, the engaging in an occu-

pation, or the enjoyment of a privilege (citations omitted). Tax laid on manufacture, sale, or consumption of commodities or upon licenses to pursue certain occupations or upon corporate privileges. In current usage the term has been extended to include various license fees and practically every internal revenue tax . . . .

Black's Law Dictionary (West 5th ed., 1979) at p. 506. That the Congress understood "excise" to include sales taxes is made clear by its commentary to the enacted H.R. 8200:

All Federal, State, or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes.

124 Cong.Rec. H 11,113 (daily ed., Sept. 28, 1978).

 Further, the legislative history shows that Congress intended in the enacted version of the Bankruptcy Code to limit priority status for, and non-dischargeability of, sales tax obligations to those less than three years old. H.R. 8200, as it passed the House on February 1, 1978, and reached the Senate, included the present sub-section (E), with its three-year limitations period, and gave priority under a subsection (C) to taxes required to be withheld from wages, salaries, commissions, dividends, or interest, with a two-year limitations provision. H.R. 8200, 95th Cong. 2d Sess. 82–85 (Feb. 8, 1978). The Senate amended the section to eliminate sub-section (E) and to broaden sub-section (C) to include any tax required to be collected or withheld from others, while also eliminating the two-year limitations period. S.2266, 95th Cong. 2d Sess. (August 10, 1978), Calendar No. 1026, at pp. 398–403. But the House rejected this amendment, and the enacted compromise version of § 507 restored the separate sub-section (E) for excise taxes, while maintaining the Senate's removal of the limitations period for wage and salary withholding taxes under sub-section (C). The sequence of events leaves no doubt that Congress care-

fully considered the question of the priority and dischargeability of sales tax liabilities and intended, in § 507(a)(6)(E), read in conjunction with § 523(a)(1)(A), to restrict the exception to dischargeability of excise taxes to those taxes less than three years old.

█ The Borough's final argument attempts to attach liability to Lois Tapp for sales tax debts arising after the April 23, 1976, incorporation of the Mukluk Shop, Inc., based on a theory of conversion. The Borough argues that since the sales taxes were not paid, they must be presumed to have been converted. A corporate officer who converts property of another, even though she does so in her capacity as an officer and for the purposes of the corporation, is individually liable, argues the Borough.

The Court need not pass on the Borough's legal argument, because no evidence was presented to show either that a conversion occurred or that, if there was a conversion, it was carried out by Lois Tapp. The Borough presented no evidence concerning how, or even whether, sales taxes were collected at the Mukluk Shop after incorporation, where and how they were kept, or what was their final disposition.[8] Neither did the Borough present any evidence to show that Lois Tapp ever collected or disposed of sales taxes. No evidence at all was presented to show that an act of wrongful dominion over Borough property was committed by anyone. This Court cannot find that a conversion occurred based on the factual record before it.

In summary, this Court holds that Lois Tapp may be discharged from liability for any sales tax obligations for which a return was due before December 5, 1977, and that Lois Tapp is not individually liable for sales tax obligations which accrued after the April 23, 1976 date of incorporation of the Mukluk Shop, Inc. An order shall be entered accordingly.

8. At trial, the single question asked relating to such matters concerned the period when Eugene Tapp owned and operated the store.